In re Arnold C. HARMS, Individually and as General Partner of the following limited partnerships: Bee Rock Development, Blue Ridge Development, Hideaway Ranch Associates, Woodlands Associates, Falcon Associates, Falcon Associates II, Falcon Associates III, and Southwest Associates, Debtor.

Matthew D. SKEEN, Trustee, Plaintiff,

v.

Arnold C. HARMS, John Singleton, Philip Becker, Joan Deffke, Colonel H. Gist, Ronald Gist, R. F. Haas, Helen P. Hughes, William H. Key, John Reese, John Ryan, Thomas Frist, Burt LeMaster, Fred Silverman, Larry W. Roessing, H. S. Zucherman, Gerald H. Zucherman, Phillip Ellis, The Harms Children's Trust, Francis S. Bonomo, Harry Berman, Lyman Coleman, Kirstin L. O'Keefe, John A. Hill, Richard W. Furman, David W. Force, Allen Maruyama, Charles J. Kennedy, Juanita Alterman, Anthony J. Kisley, Edward E. Callaghan, John Conger, Mark Rudnick, Eugene Schnabel, Gerald H. Starkey, Jr., Jack W. Swanson, J. R. Torpey, Carl Zimet, Barrie Weiss, Donald J. Egan, Terry E. Johnson, Homer E. Olsen, John W. Dick, Charles Caldwell, Boyd Barker, Laveryn M. Talmadge, Joseph S. Jensen, Denver Psychiatric Association, a Colorado corporation, John Hannum, J. Alton Templin, E. James Ferrara and Alex S. Kudron, Defendants.

Bankruptcy No. 81 C 0365.

United States Bankruptcy Court, D. Colorado.

May 4, 1981.

Dennis A. Graham, Denver, Colo., for trustee.

Steven Zimmerman and Arthur Lindquist-Kleissler, Denver, Colo., for debtor.

John J. Gaudio, Denver, Colo., for limited partners in Hideaway Ranch Associates.

Leonard N. Waldbaum, Denver, Colo., for R. F. Haas, a limited partner in Blue Ridge Development, Ltd.

William F. Robinson, III, Loveland, Colo., for Colonel and Ronald Gist, limited partners in Blue Ridge Development, Ltd.

Richard Kranzler, Denver, Colo., for limited partners in The Woodlands Associates, Ltd.

Robert D. Gower, Denver, Colo., for Caldwell and Barker, limited partners in The Woodlands Associates, Ltd.

Lawrence M. Garber, Denver, Colo., for John Singleton and Philip Becker, limited partners in Bee Rock Development, Ltd.

Edwin Perlmutter, Denver, Colo., for Fred Silverman, a limited partner in the Falcon Associates, Ltd. partnership.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON COMPLAINT SEEKING DECLARATORY JUDGMENT

PATRICIA ANN CLARK, Bankruptcy Judge.

The matter before the Court is the Complaint Seeking Declaratory Judgment filed by the Trustee, Matthew D. Skeen. The Trustee seeks a determination that seven limited partnerships[1] in which the Debtor, Arnold C. Harms, was a general partner, dissolved when the Debtor filed his petition under Chapter 11 of the Bankruptcy Code. (In his complaint, the Trustee also sought a determination of whether a general partnership, Southwest Associates, dissolved when the debtor filed his petition. However, no evidence regarding Southwest Associates was presented to the Court and the Court cannot reach a conclusion as to Southwest Associates.) The Debtor contends that the limited partnership agreements are executory contracts within the meaning of Section 365 of the Code (11 U.S.C. § 365) and that the partnerships are still in existence. A hearing on the complaint was held on April 8, 1981, at which Dennis A. Graham represented the Trustee, Steven Zimmerman and Arthur Lindquist-Kleissler represented the Debtor, John J. Gaudio represented limited partners in Hideaway Ranch Associates, Leonard N. Waldbaum represented R. F. Haas, a limited partner in Blue Ridge Development, Ltd., William F. Robinson, III, represented Colonel and Ronald Gist, limited partners in Blue Ridge Development, Ltd., Richard

Kranzler represented limited partners in The Woodlands Associates, Ltd., Robert D. Gower represented Caldwell and Barker, limited partners in The Woodlands Associates, Ltd., Lawrence M. Garber represented John Singleton and Philip Becker, limited partners in Bee Rock Development, Ltd., and Edwin Perlmutter represented Fred Silverman, a limited partner in the Falcon Associates, Ltd. partnership. All of the limited partners, with the exception of the Debtor, join the Trustee in his position that the partnerships have dissolved.

The facts are as follows. On July 31, 1980, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. The Debtor is the general partner of all the limited partnerships named as defendants in this action, with the possible exception of Falcon Associates, II.[2] The limited partnership agreements have elements in common. Each partnership agreement is founded upon a written agreement. Harms is named as the only general partner in each agreement. The business of all of the limited partnerships is to acquire and sell real estate. Each agreement also provides for the dissolution of the partnership upon the bankruptcy of the general partner. (The Bee Rock and Blue Ridge agreements provide that dissolution shall occur upon the adjudication of bankruptcy of the general partner unless all of the limited partners agree within 30 days to choose a new general partner.) Under each agreement the general partner has full authority to manage and conduct the partnership business. Under each agreement, the limited partners have an obligation to contribute money, and this obligation still exists in all the limited partnerships.

One issue to be decided by the Court is whether the limited partnership agreements are executory contracts within the meaning of Section 365 of the Code (11 U.S.C. § 365). If these agreements are executory con-

---

1. The limited partnerships are Bee Rock Development, Ltd., Blue Ridge Development, Ltd., Hideaway Ranch Associates, The Woodlands Associates, Falcon Associates, Ltd., Falcon Associates II, Ltd., and Falcon Associates III, Ltd.

2. There is a dispute concerning who is the general partner of Falcon Associates II but the limited partnership agreement in evidence shows the Debtor as the general partner and no evidence to the contrary was submitted.

tracts, then Section 365(a) may operate to void the effective state law or contract provisions which terminate a contract automatically upon the event of bankruptcy. If these agreements are not executory contracts, then the issue is whether the provisions of the partnership agreements or state law operated to dissolve the partnership.

Section 365(a) of the Bankruptcy Code authorizes the Trustee, subject to the Court's approval, to assume or reject any "executory contract" of the Debtor. Although there is no precise definition of what constitutes an executory contract, the legislative history of Section 365 suggests that executory contracts generally include "contracts on which performance remains due to some extent on both sides." H.R.No. 95–595, 95th Cong., 1st Sess. (1977) 347, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303, S.R.No.95–989, 95th Cong., 2nd Sess. (1978) 58, U.S.Code Cong. & Admin. News 1978, p. 5844.

The Court finds interesting the definition propounded by Professor Countryman, that an executory contract is one "under which the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy*, 57 Minn.L.Rev. 439, 460 (1973) (Countryman). *See also, In re Select-A-Seat Corp.*, 625 F.2d 290 (9th Cir. 1980). However, the Court is bound, of course, by the Tenth Circuit decisions describing executory contracts. In *Workman v. Harrison*, 282 F.2d 693 (10th Cir. 1960), the Court determined that a contract between a corporate financier and a promoter whereby the corporate financier was to invest large sums of money to build a shopping center and the promoter was to provide services (purchase the land, arrange for rezoning, supervise construction, etc.) was an executory contract which the Trustee could accept or reject. "The contract was then executory in nature, neither party having completely performed and the *obligations of each remaining complex.*" *Workman v. Harrison, supra* at p. 699.

(emphasis supplied) The only obligation remaining by the investor was the investment of money.

In *King v. Baer*, 482 F.2d 552 (10th Cir. 1973), the Tenth Circuit was presented with the issue of whether a contract under which a corporation sold undivided 1/64th interests in Canadian federal oil and gas exploration permits in return for $5,218,241 was an executory contract which the trustee could accept or reject. According to the terms of the contract, the purchaser was to pay $260,912.05 within fifteen days from the date of execution of the contract. Subsequent payments of $413,110.75 were to be made on June 1 and October 1 of each year from 1970 through 1975 in payment of the contract purchase price. The purchaser in *King* made the initial payment and made no further payments. The corporation still had services to perform. The Tenth Circuit determined the contract to be executory, stating:

> In *Workman v. Harrison*, 282 F.2d 693, 699 (10th Cir. 1960), we upheld the rejection of a contract which " was then executory in nature, neither party having completely performed and the obligations of each remaining complex." Our decision there was based on the highly speculative probability of success and the additional expenditure of large sums of money which made the continued performance of the contract both "burdensome and risky." We hold the trial court here correctly found the contract to be executory, and properly permitted its rejection.

*King v. Baer, supra*, at p. 557. Thus, in *King* as in *Workman v. Harrison, supra*, it was the complexity of the obligations due on both sides and the need for additional expenditure of large sums of money that made the contracts executory. The Tenth Circuit's determinations are not inconsistent with Countryman's definition, since in the preceding cases each party was obligated to carry out some future performance and these obligations were such that the failure of one party to perform would excuse performance by the other party. However, the Tenth Circuit definition is not wholly con-

sistent with Countryman's definition, either. Application of the Countryman definition and application of the Tenth Circuit definition to the agreements now before the Court result in two different conclusions.

Applying the Countryman definition to the limited partnership agreements, the Court would conclude that the agreements are not executory. This is because failure of a limited partner to perform would not excuse the general partner from performing. All that would occur is that the limited partner would be forced to forfeit his partnership interest.[3]

■ Applying the Tenth Circuit definition to the limited partnership agreements, as it must, the Court concludes that the agreements are executory. Neither the limited partners nor the general partner has fully performed. The obligations of each remain as complex as the obligations of the parties in *King v. Baer* and *Workman v. Harrison, supra.* The general partner has a multitude of services to perform and the limited partners are obligated to make substantial future payments.

The determination that these contracts are executory does not decide, however, whether they have been terminated. Under Section 365(c) of the Bankruptcy Code (11 U.S.C. § 365(c)), there are certain kinds of executory contracts which cannot be assumed. *See, e. g.,* 2 *Collier on Bankruptcy,* ¶ 365.05 at pp. 365–34, 35 (15th ed. 1980); 9A Am.Jur.2d, *Bankruptcy* § 522 (1980). One kind of contract which cannot be assumed is a contract to which a party is excused under applicable nonbankruptcy law from accepting performance from a substitute. Section 365(c) states:

(c) The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such con-

tract or lease from accepting performance from or rendering performance to the trustee or an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; ....

■ A partnership agreement creates a fiduciary relationship among the members of the partnership. It is a contract based upon personal trust and confidence. Under applicable nonbankruptcy law, the limited partners in a limited partnership do not have to accept substituted performance from a general partner other than the one with whom they have contracted. The general partner has no right without the consent of all the limited partners to admit a new general partner (Colo.Rev.Stat. 7–61–110 (1973)). Since a limited partnership cannot exist without a general partner, Colo.Rev.Stat. 7–61–102 (1973), the limited partnerships dissolved when the limited partners were without their general partner.

■ It is obvious that the Trustee cannot assume the position of general partner of these limited partnerships, since he is not the person with whom the limited partners contracted. Thus, the partnerships dissolved when the Trustee was appointed. The more difficult question is whether the partnerships dissolved earlier, that is, when the general partner became a debtor-in-possession. In other words, did the limited partnerships dissolve for lack of a general partner when the "debtor-in-possession" took over operation of the partnerships.

It appears that the rule in the Second Circuit is that a trustee or a debtor-in-possession is not the same entity as a pre-bankruptcy debtor, but is a new entity with its own rights and duties, subject to the supervision of the Bankruptcy Court. *Matter of Unishops, Inc.,* 543 F.2d 1017 (1976); *In re*

---

**3.** If all the limited partners failed to perform, presumably the general partner's performance would be excused.

*CRS Architectural Metals Corp.*, 1 B.R. 729 (E.D.N.Y.1979). This rule originated in cases involving labor collective bargaining agreements and was not meant to be extended as a generalization. *Matter of Unishops, Inc., supra*, at 1018. However, the rule was extended to a case involving the enforcement of an executory *arbitration contract* against a trustee. *Allegaert v. Perot*, 548 F.2d 432 (2d Cir. 1977), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977).

■ Section 1107 of the Code (11 U.S.C. § 1107) vests the debtor-in-possession with all the rights and powers of a trustee, other than the right to compensation under Section 330. Thus, the debtor-in-possession may, subject to some limitations, use, sell or lease property of the estate, sell property of the estate free and clear of any interest in such property, obtain credit, avoid preferential transfers and do many other things. *See, e. g.*, 5 *Collier on Bankruptcy*, ¶ 1107.-02[2] at pp. 1107–4–7 (15th ed. 1980). Since the debtor-in-possession stands in the shoes of the trustee, he owes a fiduciary obligation to all creditors. He is, then, for all interests and purposes, the equivalent of a trustee appointed by the court.

■ The Court is convinced that under the circumstances of this case, the debtor-in-possession is not the same entity as the pre-petition general partner of the seven limited partnerships.[4] A general partner is in a fiduciary relationship with the limited partners. It is important that he have no conflict of interest. Moreover, an agreement among partners is unique in the law. It is not only a legal relationship, but it is also a personal relation or status, somewhat as marriage is a relation or status. 59 Am.Jur.2d *Partnership*, § 1 (1971). Partners may dissolve a partnership at will, even if the contract states otherwise (Colo. Rev.Stat. § 7–60–131 (1973)). A partner must make full disclosure of *all* material facts within his knowledge in any way re-

lating to the partnership affairs. *Caldwell v. Davis*, 10 Colo. 481, 15 P. 696 (1887). The Uniform Partnership Act reinforces these rules by providing that partners must render on demand true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner or partner under legal disability (Colo.Rev.Stat. § 7–60–120). The duty imposed by the Uniform Partnership Act is owed by all partners, but the standard of rigid fair dealing required of a managing partner vis-a-vis the inactive partners is especially high (60 Am.Jur.2d *Partnership*, § 123 (1972)). It thus becomes clear that when the only general partner in a limited partnership becomes a debtor-in-possession, there is an inherent conflict of interest which precludes him from remaining as the general partner. He is a different entity. Under Section 365(c) of the Bankruptcy Code, executory partnership agreements cannot be assumed by a debtor-in-possession without the consent of all the limited partners.

In the case now before the Court, the limited partners have not consented to the performance of the debtor-in-possession as their general partner. Therefore, the limited partnerships, having no general partner as of the day the debtor came into possession, ceased to exist (except for purposes of winding up which follows dissolution).

For the foregoing reasons, the Court finds it unnecessary to determine whether the partnerships were dissolved because of provisions in the partnership agreements themselves or under state law regarding the bankruptcy of a general partner.

ORDERED that the partnerships dissolved on the day the Debtor became a debtor-in-possession which, under the Code, was the day the petition was filed.

FURTHER ORDERED that the parties shall have ten days from the date this Order becomes final to file a written request for the withdrawal of all exhibits received in

---

4. Section 1101 of the Code defines a "debtor-in-possession" as a "debtor." However, the Court understands this definition to mean that the terms are interchangeable and not that the

debtor-in-possession and debtor are the same legal entity. *See In re CRS Architectural Metals Corp.*, 1 B.R. 729 (E.D.N.Y.1979) at fn. 3.

evidence, after which time the exhibits will be destroyed by the Deputy Clerk without further order of the Court.