**In re George A. SAFREN, Helen Safren, Ronald I. Safren, Rosa Jean Safren, Debtors.**

Bankruptcy Nos. LA–82–18569–SB, LA–86–00846–SB, LA–82–18570–SB and LA–86–00847–SB.

United States Bankruptcy Court, C.D. California.

Sept. 26, 1986.

Jeffrey Krause of Stutman, Treister & Glatt, Los Angeles, Cal., for debtors.

Leslie A. Cohen of Robinson, Wolas & Diamant, Los Angeles, Cal., for Gordon and Co., claimant.

OPINION

SAMUEL L. BUFFORD, Bankruptcy Judge.

I. INTRODUCTION

This contested proceeding presents two issues: (1) whether a creditor with a claim against a partnership has an allowable claim against the consolidated estates of the partners, who are debtors in possession

under Chapter 11 of the Bankruptcy Code; (2) whether, if such a claim would be an administrative claim against the partnership, it is also an administrative claim in the cases of the individual partners.

The Court holds that the claim is allowable against the individual estates, but that it is a general unsecured claim, and not an administrative claim.

## II. FACTS

Prior to 1982, Ronald I. Safren and George A. Safren were the general partners of Seaport Village Redondo Beach ("Seaport Village"), a California general partnership. Seaport Village was the builder, owner and operator of a shopping center complex on the Pacific Ocean waterfront in Redondo Beach, California. On September 14, 1982 the partnership filed a voluntary case under Chapter 11 of the Bankruptcy Code. Seaport Village continued to operate as debtor in possession after the filing of the Chapter 11 case.

On October 22, 1982 involuntary Chapter 11 petitions were filed against George A. Safren and Ronald I. Safren, who consented to the entry of orders for relief on December 7, 1982.

Seaport Village's reorganization efforts were unsuccessful, and the partnership ultimately lost its principal asset through a foreclosure of the second deed of trust on the shopping center in March, 1985. Its case was dismissed on September 24, 1985, and its only asset is a possible claim against the partners for the payment of partnership debts.

Helen Safren, wife of George A. Safren, filed her voluntary Chapter 11 case on January 16, 1986. Rosa Jean Safren, wife of Ronald I. Safren, filed her voluntary Chapter 11 case on the same date. The Court confirmed a joint plan of reorganization for the two Safren couples on June 24, 1986, thereby granting substantive consolidation to the four cases.

Claimant Gordon and Company ("Gordon") is a sole proprietorship owned by Gene Gordon, a licensed real estate broker. Gordon served as a broker for Seaport Village in 1984, and obtained a tenant for one of the shops. Gordon earned a fee of $12,600 from Seaport Village for the brokerage services. All of Gordon's services were provided long after the filing of the Chapter 11 cases of Seaport Village, Ronald Safren and George Safren, of which Gordon was aware.

Gordon has filed a claim in the amount of $12,600 in the Safren cases, and asserts that it is entitled to an administrative priority. The Safrens have objected to the claim, and argue (1) that the claim is only allowable against the Seaport Village estate, and (2) that, even if the claim is allowable against the Safrens as general partners of Seaport Village, the claim is not entitled to priority status in their cases.

This issue is crucial to Gordon because, under the confirmed plan, administrative claims will be paid in full, but general unsecured claims will not be paid at all.

## III. DISCUSSION

### A. Dissolution of Partnership Upon Filing of Chapter 11 Case

As a preliminary matter, the Court must determine whether the filing of the Seaport Village Chapter 11 case or the subsequent filing of the partners' Chapter 11 cases dissolved the Seaport Village partnership.

■ Partnerships, like other business entities in the United States, are created and are largely governed by state law. In certain limited areas, including bankruptcy, partnerships and other business entities are subject to federal law, which preempts inconsistent state law.[1]

The California statute governing general partnerships is the Uniform Partnership

---

1. The Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *U.S. Const.* art. VI, cl. 2.

Act, with certain modifications.[2] California Corporations Code § 15031(5) (West 1977), which is identical to Uniform Partnership Act § 31(5), provides: "Dissolution is caused ... (5) By the bankruptcy of any partner or the partnership...."[3]

### 1. *Partnership Chapter 11 Case*

Apparently no reported case has determined whether the filing of a partnership Chapter 11 case automatically dissolves a general partnership under section 31(5) of the Uniform Partnership Act.[4]

■ The Court holds that the filing of a Chapter 11 case by or against a general partnership does not dissolve the partnership. This holding is based on grounds of both statutory construction and public policy.

As a matter of statutory construction, the applicability of section 31(5) of the Uniform Partnership Act to a Chapter 11 partnership bankruptcy case is an open question. The Uniform Partnership Act was promulgated by the National Conference of Commissioners on Uniform State Laws in 1914, when the only kind of bankruptcy available was a liquidation similar to that available under Chapter 7 of the Bankruptcy Code today. Reorganization was first introduced into the Bankruptcy Code in 1933, in the middle of the Great Depression, when Congress added section 77 to the Bankruptcy Act to permit the reorganization of railroads. Pub.L. No. 72–420, 47 Stat. 1474 (1933). In 1934 Congress authorized corporate reorganization in a lengthy section 207, Pub.L. No. 72–424, 48 Stat. 912

(1934), which was expanded into Chapters X through XIII in the Chandler Act of 1938. Act of June 22, 1938, Pub.L. No. 74–575, 52 Stat. 840 (1938). Thus, when the National Conference of Commissioners on Uniform State Laws wrote section 31(5), they did not contemplate that it would apply to any kind of bankruptcy other than liquidation, because no other kind of bankruptcy existed. *Accord,* Kennedy, "Partnership and Partners' Estates Under the Bankruptcy Code," 1983 *Ariz.St.L.J.* 219, 274, 277. In consequence, the Court must look to policy considerations to determine whether section 31(5) should be extended to Chapter 11 partnership bankruptcy cases.

Sound policy grounds support the refusal to apply section 31(5) to dissolve a partnership that is a debtor in a Chapter 11 bankruptcy case. If a partnership is to be reorganized and to continue in business, state law should not be permitted to dissolve it. Upon confirmation of a plan of reorganization, the assets of the bankruptcy estate, which was created by the filing of the case, are revested in the partnership, subject to those debts provided for in the plan; unpaid partnership liabilities are discharged. The partnership, like a corporation, then emerges from Chapter 11 to continue in business.

In addition, the dissolution of a partnership upon the filing of its Chapter 11 case may have substantial tax consequences, that could render its reorganization difficult or impossible. Such consequences are avoided by the Court's ruling that a Chap-

---

**2.** In 1949 California adopted, with principally minor variations, the Uniform Partnership Act, promulgated in 1914 by the National Conference of Commissioners on Uniform State Laws. This statute has been adopted in every state of the United States except Louisiana, and in the District of Columbia, Guam and the Virgin Islands.

**3.** Section 31(5) may have been inspired by section 5(i) of the Bankruptcy Act of 1898, which provided:
> Where all the general partners are adjudged bankrupt, the partnership shall also be adjudged bankrupt. In the event of one or more but not all of the general partners of a part-

nership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the general partner or partners not adjudged bankrupt; but such general partner or partners adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit and account for the interest of the general partners adjudged bankrupt.

**4.** In *Preston v. United States (In re 4100 North High, Ltd.)* 3 B.R. 232, 238 (Bankr.S.D.Ohio 1980), the court stated in dictum that a limited partnership's filing of a liquidation case under the Bankruptcy Act dissolved the partnership.

ter 11 filing does not dissolve a partnership.

In contrast to the sound policy grounds supporting the continuation of a general partnership that is a Chapter 11 debtor, the Court discerns no partnership law benefit to be derived from the automatic dissolution of a general partnership upon the filing of a Chapter 11 case.

Thus section 31(5) of the Uniform Partnership Act does not dissolve a general partnership upon its becoming a debtor under Chapter 11 of the Bankruptcy Code.[5] In consequence, the Court holds that the Seaport Village partnership was not dissolved by the filing of its Chapter 11 case.

### 2. *Partner Chapter 11 Case*

■ For similar reasons, the filing of a Chapter 11 case by or against a partner does not dissolve a general partnership. Such a dissolution was not contemplated when section 31(5) was drafted in 1914, because no reorganization bankruptcy existed. In addition, if a partner is to reorganize his business affairs, he should not be faced with an automatic dissolution of all partnerships in which he is a partner, with the administrative and tax complications resulting therefrom. The Court discerns no benefit under partnership law from the automatic dissolution of a partnership upon the filing of a Chapter 11 case by a partner. Thus the filing of the individual Safren Chapter 11 cases did not dissolve the Seaport Village partnership.

Two reported cases have held that a Chapter 11 filing by a general partner of a limited partnership dissolves the limited partnership, but none has addressed the issue for a general partnership.[6] In *In re Minton Group, Inc.*, 27 B.R. 385, 390 (Bankr.S.D.N.Y.1983), *aff'd*, 46 B.R. 222 (S.D.N.Y.1985), the court applied New York's codification of section 31(5) to dissolve a limited partnership on the grounds that section 31(5) applies to limited partnerships as well as to general partnerships. The Court assumed that the filing of a Chapter 11 case by a general partnership would effect its dissolution pursuant to section 31(5). In *Skeen v. Harms (In re Harms)*, 10 B.R. 817, 821–822 (Bankr.D. Colo.1981), the court held that the general partner of a limited partnership had become a different entity, as a Chapter 11 debtor in possession, and that it held an inherent conflict of interest with the duties of a general partner in a limited partnership. In consequence, the court held, the general partner could no longer function as a general partner of the limited partnership, absent consent of the limited partners (which was not obtained), and the limited partnership dissolved for lack of a general partner. The court in *Harms* did not reach the applicability of section 31(5).

The Court finds *Harms* inapplicable, and *Minton* unpersuasive. The *Harms* rationale is confined to limited partnerships, because it relies upon the absence of a general partner for its conclusion that the limited partnership dissolved. While *Minton* also involved a limited partnership, it relied upon section 31(5) of the Uniform Partnership Act, and thus is not distinguishable on these grounds. However, the court in *Minton* failed to consider either the historical relationship between the Uniform Partnership Act and Chapter 11 of the Bankruptcy Code or the policy grounds underlying the applicability of section 31(5) to a Chapter 11 case. For these reasons the court in *Minton* improperly applied section 31(5) to a Chapter 11 case.

If a partnership is not dissolved by the filing of a Chapter 11 case for a partner, it must continue to have partners. In consequence, when a partner becomes a Chapter

---

**5.** Because of the construction given to section 31(5), the Court does not reach the issue of whether it is preempted by Chapter 11 of the Bankruptcy Code. The Court also does not reach the issue of whether the dissolution of a partnership by the filing of a bankruptcy case is invalidated by Bankruptcy Code § 365(e), which gives a debtor the power to affirm or reject an executory contract.

**6.** In *Houchen v. Gadberry (In re Gadberry)*, 30 B.R. 13 (Bankr.C.D.Ill.1980), the court stated in dictum that the Chapter 7 case of a partner dissolves the partnership.

11 debtor, the estate of the debtor is substituted as a partner of the partnership. This result is also necessary to enable the Chapter 11 plan to dispose of the obligations of the partner resulting from his membership in the partnership. Thus the Safren estates became the Seaport Village partners when their individual Chapter 11 cases were filed.

### B. *Gordon Claim Against Seaport Village*

■ The first argument of the Safrens, that the Gordon claim is allowable only against the Seaport Village estate, is meritless.

The Chapter 11 case of Seaport Village was dismissed without the confirmation of a plan, and thus without a discharge of its debts. Gordon in consequence is prevented from pursuing an administrative claim in that case. However, the partnership survived the Chapter 11 case, and still exists today. Seaport Village is now simply an inoperative partnership without significant assets, and with no capability of paying its debts.

Bankruptcy Code § 349(b) provides generally for the effect of the dismissal of a Chapter 11 case. One consequence of the dismissal is the termination of the estate created under section 541 by the filing of the bankruptcy case. Section 349(b) provides in part:

Unless the court, for cause, orders otherwise, a dismissal of a case ...

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

The objective of section 349(b) is to restore all property rights, insofar as is practicable, to their positions when the case was filed. 2 *Collier on Bankruptcy* ¶ 349.03 (15th ed. 1986). However, it makes no provision for the disposition of debts, such as that owing to Gordon in this case, that are incurred by the debtor in possession during the pendency of the case.

The legislative history provides some limited guidance on this issue: It indicates that the restoration of pre-petition property rights does not necessarily "encompass undoing sales of property from the estate to a good faith purchaser." H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6294; S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5834.

■ This legislative history illustrates a broader principle that is applicable in this case: When a Chapter 11 case is dismissed prior to the confirmation of a plan, the post-petition transactions of the debtor in possession are binding upon the partnership after dismissal of the case. Thus the commission earned by Gordon during the pendency of the Seaport Village case is binding upon the Seaport Village partnership after the pre-confirmation dismissal of its Chapter 11 case.

### C. *Gordon Claim Against Safrens*

#### 1. *Allowability*

Absent any intervening bankruptcy, it is clear that Gordon would have a claim against the Safrens for its commission, by virtue of their status as general partners of Seaport Village. However, at the time that this claim arose both Seaport Village and the Safrens were debtors in their respective Chapter 11 cases. Under section 541(a), the filing of a case creates an estate that is a separate legal entity from the debtor. The Safrens argue that this alters the relationship between the estates of the general partners and the estate of the partnership, such that the estates of the general partners are not liable for the debts of the estate of the partnership. The Safrens argue that the obligation to Gordon for the real estate commission was incurred only by the Seaport Village estate, and not by the Safren estates. They argue that the estates of the individual partners of the partnership were not guarantors of the partnership obligation, and that in consequence Gordon has no claim against the individual estates. The Court does not find this analysis persuasive.

 Partners are jointly liable for contractual obligations of a general partnership. This liability flows from state law, not bankruptcy law. California Corporations Code § 15015 (West 1977) contains section 15 of the Uniform Partnership Act, which provides:

All partners are liable

(a) Jointly and severally for everything chargeable to the partnership under Sections 15013 and 15014 [wrongful act and breach of trust].

(b) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.

Because a Chapter 11 filing on behalf of a partnership does not effect a dissolution of the partnership, section 15 applies in full force notwithstanding such a filing: The partners continue to incur individual liability for the post-petition debts of the partnership.

 Upon the filing of a Chapter 11 case for a partner, the estate as a substituted partner continues to incur liability for ongoing partnership debts, whether the partnership is a Chapter 11 debtor or not a debtor at all. Because the Ronald Safren and George Safren estates were partners in Seaport Village at the time that the Gordon debt was incurred, the estates are liable under section 15 for the Gordon claim. In consequence, the claim is allowable against the consolidated Safren estates.

If Seaport Village were a debtor under Chapter 7, the outcome would be different. Under Bankruptcy Code § 723(c)[7] the Seaport Village trustee would have a claim against the Safrens for debts of the partnership. This claim would replace all claims by partnership creditors, including Gordon; the claims of partnership creditors would be disallowed, to avoid duplication of claims.[8]

### 2. *Priority*

Having determined that the Gordon claim is allowable against the consolidated Safren estates, the Court must determine its priority. Gordon argues that its claim should be allowed as an administrative claim under Bankruptcy Code § 503(b)(1)(A), and thus entitled to highest priority. The Safrens, on the other hand, argue that it should be at most a general unsecured claim. The Safrens concede that the claim would be entitled to an administrative priority in the Seaport Village case, if the partnership case were still pending.

### a. *The Jingle Rule*

To determine the priority status of the Gordon claim, the Court must examine the historical background of the priority of claims for partnership and partner creditors.

Under the dominant rule of nineteenth century common law, partnership creditors

---

**7.** 11 U.S.C. § 723(c) provides:

[T]he trustee has a claim against the estate of each general partner in such partnership that is a debtor in a case under this title for the full amount of all claims of creditors allowed in the case concerning such partnership. Notwithstanding section 502 of this title, there shall not be allowed in such partner's case a claim against such partner on which both such partner and such partnership are liable, except to any extent that such claim is secured only by property of such partner and not by property of such partnership. The claim of the trustee under this subsection is entitled to distribution in such partner's case under section 726(a) of this title the same as any other claim of a kind specified in such section.

**8.** The Seaport Village claim against the Safrens would not include the Gordon claim. The

amount of the partnership trustee's claim is fixed by section 723(c) as the "full amount of all claims of creditors allowed in the case concerning such partnership." The version of section 723(c) in H.R. 8200 as originally passed by the House of Representatives included "all claims allowed in the case," but, as stated in the legislative explanation of the changes made in the finally enacted version of the bill, "[b]y restricting the trustee's rights to claims of 'creditors,' the trustee of the partnership will not have a claim against the general partners for administrative expenses or claims allowed in the case concerning the partnership." However, Gordon would be entitled to be paid ahead of any general unsecured creditors in the Seaport Village case, even though any recovery from the Safren estates by the Seaport Village trustee may be based on lower priority partnership debts.

enjoyed a priority in the distribution of partnership assets, and separate creditors enjoyed a priority in the distribution of a partner's separate assets. Lewis, "The Uniform Partnership Act—A Reply to Mr. Crane's Criticism," 29 *Harv.L.Rev.* 291, 306–307 (1916). This rule has come to be known as the "jingle rule".

The jingle rule was included in the Bankruptcy Act of 1898. Section 5(g) provided:

> The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts and the net proceeds of the individual estate of each general partner to the payment of his individual debts.... [9]

When the Uniform Partnership Act was promulgated in 1914, the jingle rule was codified in it, in part so that partnership law would correspond to section 5(g) of the Bankruptcy Act. Lewis, *supra.* Section 40 of the Uniform Partnership Act, adopted in California Corporations Code § 15040 (West 1977), provides:

> (h) Priorities between partnership and separate creditors. When partnership property and the individual properties of the partners are in possession of a court for distribution, partnership creditors shall have priority on partnership property and separate creditors on individual property....
>
> (i) Priorities against separate property of bankrupt or insolvent partner. Where a partner has become bankrupt or his estate is insolvent the claims against his separate property shall rank in the following order:
>
> I. Those owing to separate creditors,
>
> II. Those owing to partnership creditors,

III. Those owing to partners by way of contribution.

Under the jingle rule the Gordon claim would be subordinated to the unsecured claims of the separate Safren creditors. Because the separate unsecured creditors are to receive nothing under the confirmed plan, Gordon would also receive nothing.

### b. *Bankruptcy Code Provision—Chapter 7*

■ Because bankruptcy law is federal law, enacted pursuant to the constitutional grant of bankruptcy power,[10] it preempts state law, including partnership law under the Uniform Partnership Act, pursuant to the supremacy clause of the United States Constitution. Thus, to the extent that the Bankruptcy Code has abandoned the jingle rule, it is not applicable in this case.

The Bankruptcy Code repealed the jingle rule for partnerships in cases under Chapter 7. House Report No. 595, 95th Cong., 1st Sess. 381 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6337; Senate Report No. 989, 95th Cong., 2d Sess. 95 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5881. The claim under section 723(c) by the Chapter 7 trustee of a general partnership against each partner, for the full amount of all creditors' claims against the partnership, is not subordinated to the separate claims against the partner.

■ Thus, if Seaport Village were a debtor under Chapter 7, its trustee's claim against the consolidated Safren estates, for the full amount of all allowed creditors' claims in the Seaport Village case, would be a general unsecured claim. This rule would apply to the Safrens as general part-

---

**9.** Section 5(g) further provided:

Should any surplus remain of the property of any general partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be distributed among the individual partners, general or limited, or added to the estates of the general partners, as the case may be, in the proportion of their respective interests in the partnership and in the order of distribution provided by the laws of the State applicable thereto.

**10.** The Constitution provides: "The Congress shall have the power ... to establish ... uniform Laws on the subject of Bankruptcies throughout the United States." *U.S. Const.* art. I, § 8, cl. 4.

ners, whatever the chapter under which their individual bankruptcy cases may be filed.

However, the partnership must be a debtor under Chapter 7 to be subject to this provision. Bankruptcy Code § 103(b); *In re Kaveney*, 60 B.R. 34, 36 (Bankr. 9th Cir.1985). Because Seaport Village was a debtor under Chapter 11, the provisions of section 723(c) never applied to it. There is no comparable provision under Chapter 11, except that section 1129(a)(7)A(ii) requires that a non-consenting creditor receive as much under a Chapter 11 plan as he would under a Chapter 7 liquidation.

The Court need not, however, determine the rights of Gordon as to a partnership that is a debtor under Chapter 11, in view of the fact that the Seaport Village case has been dismissed. The Gordon claim is now simply a debt of the partnership.

### c. *Jingle Rule—No Partnership Bankruptcy Case*

■ Where the partnership is not a debtor in a case under the Bankruptcy Code, as in this case, section 723 does not purport to prescribe the order of distribution of the proceeds of the partner debtor's estate, and no other Bankruptcy Code provision is applicable. Nevertheless, the priority of distribution of a partner's estate is a bankruptcy law issue, and is governed by federal law, which preempts state law. Because Congress has not legislated on this issue, the bankruptcy courts must fill in the interstices.

The Court must thus determine whether the jingle rule applies to the distribution of a partner's estate, in the absence of a bankruptcy case for the partnership. If the rule applies, the Gordon claim must be subordinated to all claims of separate Safren creditors. If it does not apply, the Court must determine whether Gordon shares equally with the other Safren unsecured creditors, or whether Gordon is entitled to an administrative priority against the Safren estates.

As indicated *supra*, the jingle rule has been eliminated altogether from the only relevant Bankruptcy Code provision. Although the rule survives in section 31(5) of the Uniform Partnership Act, the Court finds this unpersuasive.

Furthermore, the legislative reports indicating that Congress intended to repeal the jingle rule, insofar as it applied to the distribution of a partner's estate, do not confine their discussion to Chapter 7: The reports state that section 723 "repeals the jingle rule, which, for ease of administration, denied partnership creditors their rights against general partners by permitting general partners' individual creditors to share in their estates first to the exclusion of partnership creditors." H.R.Rep. No. 595, 95th Cong., 1st Sess. 381 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6337; S.Rep. No. 989, 95th Cong., 2d Sess. 95, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5881.

The general rejection of the jingle rule in bankruptcy cases was apparently intended by Congress. The House Report states: "Such a creditor [i.e., a creditor of the partnership] may file a claim against a partner that is a debtor in a case under Title 11, but as soon as the order for relief is entered, in a case under Chapter 7 concerning the partnership, the creditor's claim is disallowed." H.R.Rep. No. 595, 95th Cong., 1st Sess. 200 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6161.

■ Administrative feasibility also supports the rejection of the jingle rule for the distribution of the proceeds of a partner's estate in the absence of a partnership bankruptcy case. If the rule is rejected, partnership creditors with allowed claims will share in the distribution of a partner's estate equally with separate creditors. If the partnership subsequently becomes a debtor under Chapter 7, the partnership trustee's section 723(c) claim is substituted for the claims of the partnership's creditors, and it has equal status with the claims that it replaces. If the jingle rule is applied, on the other hand, the partnership trustee's claim will have a higher priority under section

723(c) than the claims of partnership creditors that it replaces: such a claim by the partnership trustee may substantially upset the administration of the partner's estate. *See* Kennedy, "Partnerships and Partners Under the Bankruptcy Code: Claims and Distributions," 40 *Wash. & Lee L.Rev.* 55, 61–63 (1983).

Thus the Court concludes that the jingle rule does not apply in a Chapter 11 case. In consequence, the Gordon claim is not subordinated to the other unsecured claims in the Safren cases.

### d. *Administrative Priority*

■ Because of the dismissal of the Seaport Village case, the priority provisions of section 507 no longer apply to it. Outside of bankruptcy, there is no priority among unsecured creditors. The Seaport Village administrative claims have been demoted to general unsecured claims by the dismissal of the Seaport Village case. Thus, the debt owing by Seaport Village to Gordon is on the same level with any other unsecured Seaport Village debt.

■ The existence of the consolidated Chapter 11 cases of the Seaport Village partners does not alter this status: only the administrative claims arising from the Safren cases are entitled to administrative priority.

Administrative feasibility requires this result. If Seaport Village files a subsequent Chapter 7 case, pursuant to section 723(c) the trustee's general unsecured claim against the Safren estates will replace the Gordon claim, which will be disallowed. Gordon's administrative claim will then be administered in the partnership case. If the Gordon claim is awarded an administrative priority in the Safren case, it will have a higher priority than the partnership trustee's claim that replaces it: the substitution of the trustee's claim may again substantially upset the administration of the partner's estate. On the other hand, as a general unsecured claim the Gordon claim will have the same priority as the partnership trustee's claim replacing it, and the administrative problems will be avoided.

Accordingly, the Court holds that an unsecured partnership claim asserted in the Chapter 11 case of a partner is a general unsecured claim, even if it would be an administrative or other priority claim in a bankruptcy case of the partnership. Thus the Gordon claim is a general unsecured claim against the consolidated Safren estates.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the Gordon claim is allowable against the Safren estates. However, the Court holds that the claim is not entitled to priority as an administrative claim under Bankruptcy Code § 503(b)(1)(A). Gordon is entitled to share ratably with the other general unsecured claimants in any dividend payable to them. Unfortunately for Gordon, its claim will not be paid under the consolidated plan of reorganization that the Court has confirmed in this case.

The foregoing constitutes the Court's findings of fact and conclusions of law. The debtors are directed to submit an order consistent with this opinion.