## OBERLIN, et al. v CAPITAL SUNBELT INVESTMENTS, INC., et al.

### Case No. GC-G-86-797

Tenth Judicial Circuit, Polk County

July 1, 1987

**APPEARANCES OF COUNSEL**

**J. Miles Buchman** for plaintiffs.

**Jeremy P. Ross** and **Jeffrey W. Warren** for defendants.

## OPINION OF THE COURT

J. TIM STRICKLAND, Circuit Judge.

THIS CAUSE came on for trial before the Court on the 14th and 15th days of April, 1987, and there being present the Plaintiffs, DONALD G. OBERLIN, JAMES B. LOCKE, WILLIAM J. HINTON, ROBERT A. SCHUBEL, DALE S. BOURDETTE and DARRELL EUGENE HESS, represented by their attorney, J. MILES BUCHMAN, and the Defendants, CAPITAL SUNBELT INVESTMENTS, INC., MICHAEL J. CANAN, JOHN R. HIGGINS, and JANE L. WEAD TRUST, represented by their attorney, JEFFREY W. WARREN.

Six of the Plaintiffs contend that they executed Individual Retirement Trust Accounts with a corporation, Planned Retirement, Inc. (PRI hereafter), which they believed would holds the funds, investing them in real estate upon the Plaintiffs' written approval. Plaintiffs contend that in violation of this, PRI invested the funds on their behalf in a limited partnership they knew nothing of. This limited partnership, Capital: Homestead, Ltd. (Homestead hereafter), subsequently purchased property with the funds and thereupon leased the property to its general partner, Capital Sunbelt Investments (Capital hereafter). Two of the other Plaintiffs, knowing of the limited partnership Homestead, also invested funds subsequently used to purchase and lease the property to Capital.

Plaintiffs, the limited partners of Homestead, request this Court to distribute Homestead's assets to them upon the grounds that (1) six of the Plaintiffs had no knowledge of Homestead, and that (2) Capital, as lessor of the property, improperly failed to default itself as lessee of the property for non-payment of rent, and, has moved to lessen the rental payments.

Plaintiffs contend that Homestead is not a limited partnership and is therefore subject to the partnership dissolution statutes of the Florida Uniform Partnership Act. Six of the Plaintiffs predicate this contention upon the claim that Homestead is not a limited partnership because "Plaintiffs cannot be considered limited partners in a partnership they had no knowledge of, and had never seen the limited partnership agreement of [and had not] sign[ed] the partnership [as per F.S. 620.02(1)(a)]." Plaintiff's Proposed Findings of Fact and Memorandum of Law, page 10. Florida Statutes Section 620.02(1)(a) states, "Two or more persons desiring to form a limited partnership *shall*: (a) *sign* and swear the certificate. . ." Emphasis added.

32

In the instant case, it was PRI which signed the Agreement to Become a Limited Partner in Homestead as trustee for each of the six Plaintiffs' Individual Retirement Accounts. The question before this Court therefore is whether another entity or person (here, PRI) may validly sign for the statutorily required certificate on behalf of the intended limited partner (here, Plaintiffs). Pertinent to this question, the *Court in Matter of Camp Carson Mines Ltd.*, 36 B.R. 554, 555 (Bankr. M.D. Fla. 1983) stated:

> [T]he limited partnership certificate may be executed by . . . some other person on behalf of another . . . pursuant to a power of attorney . . . provided *the existence of the power may be established by producing the instrument which created the power.*

Emphasis added. Here, PRI acted not with the Plaintiffs' power of attorneys, but rather pursuant to the Trust Agreement each Plaintiff had signed by PRI. The authority Plaintiffs granted to PRI through this Agreement may, in this instance, be analogized to a power of attorney: If Plaintiffs *in writing* granted to PRI authority under which PRI could execute the limited partnership certificate, the statutory requirement of a signed certificate necessary for Plaintiffs to become limited partners in Homestead would be satisfied.

The Trust Agreement in the instant case states, "that Planned Retirement, Inc. is a passive trustee of [Plaintiffs'] individual retirement account. That is, it is not authorized to exercise any investment discretion. Any decisions with respect to the investment of funds in [Plaintiffs'] IRA must be made by [Plaintiffs'] or by a person duly authorized by [Plaintiffs]." Joint Exhibit No. 43. The Agreement also states, "Funds in the account shall be invested in accordance with the written instructions of the Grantor. . . . *The Trustee is required to act solely as a passive trustee and to invest assets solely at the instructions of the Grantor..* Attachment to Form 5305, Article IX, Grantor to Direct Trustee. PRI admits having no written authority to enter into the limited partnership on Plaintiffs' behalf. Furthermore, the President of PRI, Mr. Patrick, testified himself that the authority of PRI to invest in Homestead for Plaintiffs was given *orally*. As made apparent by *Camp Carson Mines,* oral authority is insufficient to satisfy the statutory requirement of § 620.02(1)(a). The limited partnership of Homestead as to these six Plaintiffs is, therefore, non-existent.

Plaintiffs appear to assume that if the PRI Trust Agreement in relation to Homestead and Capital does not give rise to the existence of a limited partnership, their relationship amongst themselves must, de facto, be considered to be of a partnership nature. This Court can find

**33**

no case law justifying such an assumption. If another individual or entity cannot, without written authority, transform a person into a limited partner without their knowledge or consent, it follows that neither could this individual or entity transform the person into a partner. Rather, Homestead and Capital, having accepted Plaintiffs' funds through PRI, act instead as fiduciaries to Plaintiffs. (This Court notes that Mr. Patrick, an officer of Capital, may have fiduciary relationships to Plaintiffs through his other affiliations: President of PRI, connection to Capital Sunbelt, Management, the firm apparently hired to perform Capital's managerial duties; and connection to Capital Securities, the brokerage which sold PRI to Plaintiffs.) Having concluded the existence of a fiduciary relationship, this Court also concludes that it was a breach of fiduciary duty for Capital to fail to default itself for non-payment of rent, and in subsequently moving to lower the rental payments.

The limited partnership as pertaining to the other two Plaintiffs herein involved is also non-existent, although for a different reason. In failing to default Capital as lessee, and in attempting to lower the rental payments, Capital as lessor not only breached its fiduciary duties to all limited partners, but put itself in the position of having an intolerable conflict of interest with them. As stated by the Court in *In Re Harms*, 10 B.R. 817, 822 (Bankr. D. Colo. 1981):

> A general partner is in a fiduciary relationship with the limited partners. It is important that he have no conflict of interest. . . . It thus becomes clear that when the only general partner in a limited partnership [has] an inherent conflict of interest [it] precludes from from remaining as general partner. He is a different entity. . . . Therefore, the limited partnerships, having no general partner as of the day [the general partner acquired a conflict of interest,] ceased to exist (except for purposes of winding up. . .).

In the instant case, therefore, the limited partnerships of these two Plaintiffs ceased to exist when Capital failed to default itself for non-payment of rent.

Having concluded that the limited partnerships herein involved are non-existent, it remains only for this Court to determine the appropriate remedy to these circumstances. Section 620.29 of the Florida Uniform Limited Partnership Law states, "In any case not provided for in this part the rules of law and equity, including the law merchant, shall apply." Since neither limited partnership or partnership laws are applicable here, Plaintiffs are left without legal remedy, and as such this Court must turn to principles of equity for the disposition of this dispute.

34

Plaintiffs "submit that [they] are entitled to [restitution] because . . . Capital has been unjustly enriched. . .". Plaintiffs' Proposed Findings of Fact and Memorandum of Law, page 10. Supportive, the Court in *Matter of Munzenrieder Corp.*, 58 B.R. 228, 232 (Bankr. M.D. Fla. 1986) stated:

### *UNJUST ENRICHMENT*

It is a well recognized principle that one person should not be permitted unjustly to enrich himself at the expense of another, and should be required to make restitution of all the property or the benefits received, retained or appropriated when it appears to be just and equitable. In that case, restitution shall be made provided, however, that the action involves no violation or frustration of law nor is it contrary to public policy either directly or indirectly. . . . When a person retains money or benefits which in justice and equity belong to another, the theory of unjust enrichment may compel restitution. . . . Thus, one who has conferred the benefit upon another solely because of a basic mistake of fact induced by a non-disclosure of a material fact, may be entitled to a restitution on the doctrine of unjust enrichment.

This Court has already discussed the wrongdoing on Defendants' part upon which restitution may be predicated. The parties agree that "the land was acquired by Homestead . . ., the source of which funds were the capital contributions made to Homestead by PRI and others. The source of the funds used by PRI to make such contributions was the contributions made to it by each of the Plaintiffs, as well as by others . . .". Pre-Trial Stipulation, page 4. It is these contributors, therefore, who conferred upon Defendants the benefits received: their funds, and the appreciation of the property purchased with their funds. Due to Defendants' breach of the fiduciary obligations owed to these contributors, it would be unjust to allow Defendants to retain these benefits, thereby warranting the remedy of restitution.

THE COURT, being fully advised in the premises, does

ORDER AND ADJUDGE that the entity known as Capital: Homestead, Ltd. shall provide to Plaintiffs a full, correct and complete accounting by the 1st day of September, 1987.

THE COURT does further

ORDER AND ADJUDGE that the limited partnership of Capital: Homestead, Ltd. is non-existent. As such, its assets are to be distributed as follows:

$3,030 to Capital Sunbelt Investments, Inc., plus the applicable interest thereon from the date of the investment;

the remaining assets pro rata of contributions to each limited partner;

such distribution to be accomplished by the 1st day of October, 1987.

THE COURT does further

ORDER AND ADJUDGE that the Court retains jurisdiction to consider at a later day the question of the award of attorney's fees and/or costs.

THE COURT does further

ORDER AND ADJUDGE that the Court retains jurisdiction as to any further disputes between the parties with respect to Capital: Homestead, Ltd., and the subject matters of this lawsuit.

DONE AND ORDERED in Chambers in Bartow, Polk County, Florida, this 1st day of July, 1987.