**In re Hancel Ray HAWKINS and Kathleen Hawkins, Debtors.**

**Bankruptcy No. 689–60202–11.**

United States Bankruptcy Court,
N.D. Texas,
San Angelo Division.

April 24, 1990.

---

Paul B. Geilich, Creel and Atwood, Dallas, Tex., for debtor.

Robert Milbank, Jr., Bartholow & Milbank, Dallas, Tex., for movant.

MEMORANDUM OF OPINION ON ROCHESTER'S MOTION FOR RELIEF FROM AUTOMATIC STAY

JOHN C. AKARD, Bankrtupcy Judge.

### FACTS

On May 5, 1975, the Debtor, Hancel Ray Hawkins (Hawkins) and the Movant, Louis Rochester (Rochester) formed a general partnership, under the partnership laws of Texas, named RHR Development (RHR). The purpose of the partnership was to own and develop real estate. The partnership agreement was amended in 1982 and in 1987. Based on the 1987 amendment, Hawkins and Rochester each have a 50% ownership interest.

With respect to dissolution the partnership agreement provides:

Article IX: Dissolution

1. Causes of Dissolution. The partnership shall be dissolved by the first of the following which happens:
   (a) Withdrawal of a partner.
   (b) Death or disability of a partner or the bankruptcy of a partner.
   (c) Failure to devote time as set out in Paragraph VIII.1.

Paragraph VIII.1. states that, "Decisions and active management shall be shared by the partners in proportion to their distributive shares of profits and losses."

On April 10, 1989, Hawkins and his wife, Kathleen Hawkins, filed a Chapter 11 bankruptcy. Under the Second Amended Plan of Reorganization Hawkins intends to abandon his share in RHR at fair market value. However, under the partnership agreement, Rochester has the option of purchasing Hawkins' share: (i) at 75% of its fair market value in case of Hawkins' withdrawal from the partnership, and (ii) at 50% of its fair market value if Hawkins were to go into bankruptcy.

*Positions of the Parties*

Rochester argued that under the RHR partnership agreement the partnership could be dissolved if a partner (1) withdrew from the partnership, (2) went into bankruptcy, or (3) failed to devote time to man-

aging the partnership. According to Rochester these provisions were valid because the parties bargained for them. Rochester claimed that Hawkins' filing of a voluntary bankruptcy petition, coupled with his intent to abandon his 50% partnership interest in RHR at fair market value under his Second Amended Plan of Reorganization, were proof that all three separate and independent provisions for dissolution contained in the partnership agreement were met.

Hawkins asserted that Rochester's claim was based on a single fact, that fact being Hawkins' bankruptcy. He argued that Rochester's claims of Hawkins' withdrawal from the partnership and failure to devote time to managing the partnership were based on and derived from Hawkins' Second Amended Plan of Reorganization. He further argued that both statutory construction and public policy demand a holding that the personal bankruptcy of a general partner does not automatically trigger dissolution of the partnership.

### ISSUE

This court must decide whether the personal bankruptcy of a general partner causes dissolution of the partnership. The court holds that the partnership is not dissolved.

### DISCUSSION

There is a split of authority among the relatively few cases that have considered whether a partnership is dissolved upon the filing of bankruptcy by a partner. This court, after thoughtful consideration, finds persuasive Judge Bufford's opinion *In re Safren*, 65 B.R. 566 (Bankr.C.D.Cal.1986). In *Safren*, a general partnership consisting of two general partners filed for voluntary Chapter 11 bankruptcy. Shortly thereafter, involuntary Chapter 11 petitions were filed against the two general partners. The *Safren* court had to decide whether the filing of bankruptcy by either the general partners or by the partnership

itself caused the dissolution of the partnership. Based on statutory construction and public policy grounds, the court held that a partnership did not dissolve due to the bankruptcy of either the general partners or the partnership itself. *Id.* at 569–70.

In 1914 the Uniform Partnership Act (UPA) was promulgated by the National Conference of Commissioners on Uniform State Laws.[1] At that time the only kind of bankruptcy available was a liquidation similar to that available under Chapter 7 of the present Bankruptcy Code. Almost two decades later, Congress authorized corporate reorganization. *See* Pub.L. No. 72–424, § 207, 48 Stat. 912 (1934). Therefore, the Commissioners did not contemplate that the UPA would apply to any kind of bankruptcy other than liquidation, simply because no other kind of bankruptcy existed. *Safren, supra,* at 569.

The Texas statute governing general partnerships is the Uniform Partnership Act, with certain modifications.[2] Section 31(5) of the Texas Uniform Partnership Act provides: "Dissolution is caused: ... (5) By the bankruptcy of any partner or the partnership...." Tex.Rev.Civ.Stat. Ann. art. 6132b, § 31(5) (Vernon 1970).

From the facts elicited at hearing, it is clear that Rochester's allegations that Hawkins withdrew from RHR and/or that Hawkins failed to devote time to managing RHR stem from the fact that Hawkins is in bankruptcy. Rochester presented no evidence indicating that either claim was true prior to the filing of bankruptcy by Hawkins. Also, Rochester relies on Hawkins' Second Amended Plan of Reorganization as source of proof for his allegations. As to whether Hawkins' bankruptcy dissolved RHR, this court holds that the personal bankruptcy of a general partner does not cause the dissolution of the partnership. . *Accord Safren, supra; In re Corky Foods Corp.,* 85 B.R. 903 (Bankr.S.D.Fla.1988); *In re BC & K Cattle Co.,* 84 B.R. 69

---

1. Except for the state of Louisiana, all of the states, the District of Columbia, Guam and the Virgin Islands have adopted the UPA either in full or with modification. Table of Jurisdictions Wherein Act Has Been Adopted, 6 U.L.A. 1 (Supp.1989).

2. Texas adopted the UPA in 1961; effective as of January 1, 1962.

**317**

(Bankr.N.D.Tex.1988); *In re Rittenhouse Carpet, Inc.*, 56 B.R. 131, 133 (Bankr.E.D. Pa.1985). *Contra In re Sunset Developers*, 69 B.R. 710 (Bankr.D.Idaho 1987); *In re Minton Group, Inc.*, 27 B.R. 385 (Bankr.S.D.N.Y.1983), *aff'd*, 46 B.R. 222 (DC S.D.N.Y.1985); *In re Harms*, 10 B.R. 817 (Bankr.D.Colo.1981). If Hawkins is to reorganize his business affairs, he should not be faced with an automatic dissolution of RHR in which he is a partner, and with the administrative and tax complications resulting therefrom. *Safren, supra*, at 570.

The only other bankruptcy court in the Northern District of Texas which has expressed an opinion regarding the issue before this court is a Dallas Division bankruptcy court. In *In re BC & K Cattle Co.*, 84 B.R. 69 (Bankr.N.D.Tex.1988), Judge Felsenthal ruled that the individual bankruptcy of a general partner did not dissolve the partnership. Thus, this court's holding, coupled with the *BC & K* decision indicates the existence of a uniform rule in the Northern District.

Because Hawkins' bankruptcy did not dissolve RHR, Rochester's motion for relief from stay will be denied.

ORDER ACCORDINGLY.