**In re WESTOVER HILLS LTD., a Wyoming Partnership, Alleged Debtor.**

**Bankruptcy No. 83–00791.**

United States Bankruptcy Court,
D. Wyoming.

Jan. 29, 1985.

---

Georg Jensen, James H. Barrett, Ken McCartney, Rhonda Sigrist Woodard, Debra Hecox, Trieweiler, Bayless, Barrett &

McCartney, Cheyenne, Wyo., for Westover Hills Management Corp.

Ralph R. Mabey, Kenneth Cannon, II, LeBeouf, Lamb, Lieby & MacRae, Salt Lake City, Utah, Leslie W. Hawkey, Gillette, Wyo., for petitioning homeowners.

Glenn W. Merrick, Davis, Graham & Stubbs, Denver, Colo., for American Guaranty Life Ins. Co.

Linda S. Miller, Casper, Wyo., for American Guaranty Financial Corp.

## MEMORANDUM OPINION

HAROLD L. MAI, Bankruptcy Judge.

This matter came before the court for hearing on September 5, 1984.

## PROCEDURAL BACKGROUND

This matter comes before the court for consideration of the issues raised by an involuntary Chapter 11 petition filed against the debtor, Westover Hills Ltd., under Case No. 83–00791.

The court is called upon to decide (1) whether, for the purpose of eligibility for Chapter 11 involuntary relief, the debtor is a limited or a general partnership, and (2) depending on whether debtor is a limited or a general partnership, what should be the disposition of the case.

On December 11, 1983, alleged general partner, Westover Hills Management Corporation (Westover Hills Management), and Envirosearch Corporation (Envirosearch) filed an involuntary Chapter 11 petition against the debtor, alleging that it was not generally paying its debts as such became due. The case is styled Westover Hills Ltd., a General Wyoming Partnership, and it was alleged that the debtor was a general partnership consisting of Westover Hills Management, Envirosearch, and American Guaranty Life Insurance Company (AGLIC). The petitioning partners asserted that because the debtor was a general partner-

ship, the involuntary petition was properly commenced, pursuant to 11 U.S.C. § 303(b)(3), by themselves acting as "fewer than all its general partners." Additionally, the petitioning partners alleged that they were holders of claims against the debtor within the meaning of 11 U.S.C. § 303(b)(1).

On the same day, two hours later, Westover Hills Management Corporation also filed a voluntary petition on behalf of Westover Hills Ltd., a Limited Partnership. The voluntary Chapter 11 petition was assigned Case No. 83–00792.

On September 5, 1984, a duly scheduled hearing on the involuntary petition was held. Prior to receiving evidence on the issues raised by the involuntary petition, the court heard and ruled orally on the various motions filed that morning and the day before. The court generally denied all of the motions in order to proceed with the hearing on the merits of the involuntary petition.

The court denied the petitioning homeowners' Motion to Limit the Issues to be Heard. The court held that the issue of whether the form of the debtor was a general or a limited partnership was directly related to the other issues in the case. The court ruled that the Motion for Entry of Default would be denied because the parties, by engaging in subsequent pleadings, depositions requests, and amended petitions, had waived entry of such a judgment. The court additionally denied the Motion for Stay of the Proceedings.

Thereupon the hearing was held as scheduled. The court heard testimony from Theodore Groombs, president of Envirosearch [1] and past officer of Westover Hills Management; from Dale Fullerton, sole stockholder of Westover Hills Management and stockholder of and officer of Envirosearch; from James R. Twedt, the man-

---

**1.** Although the initial involuntary petition and all of its amendments were filed in the name of Envirosearch, as an alleged general partner, Envirosearch later retained independent counsel and filed an answer generally denying all allega-

tions in the petition. Mr. Groombs was present and testified, but Envirosearch was not represented by counsel at the hearing on the involuntary petition.

aging joint venture member of a company known as WYORCO; and from Terry Wilson, a current homeowner in the Westover Hills Subdivision who had previously been employed as an agent selling property in the Westover Hills Subdivision in Gillette, Wyoming.

Additionally, the court heard the deposition testimony of James Anderson, president and chief executive officer of American Guaranty Financial Corporation (AGFC) and chief executive officer of AGLIC, its subsidiary.

The court having considered the evidence and testimony adduced at the hearing, the depositions and briefs filed, the statements and arguments of counsel, and being fully advised of the premises, does here make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1.  Dale Fullerton was a member of the joint venture, WYORCO. He is also the sole stockholder in Westover Hills Management and is a stockholder in and Chairman of the Board of Envirosearch.

2.  On March 17, 1981, in Oregon, Dale Fullerton met with James Anderson, president of AGFC, and James Twedt, the managing joint member of WYORCO. The purpose of the meeting was to discuss the sale of the undeveloped or non-Phase 1 portion of the Westover Hills Subdivision. Anderson and Fullerton agreed to form an organization to purchase the property from WYORCO.

3.  On March 18, 1981, Anderson, his attorney Paul Ohallaren, Fullerton, his attorney Michael Was, and all but one of the members of WYORCO met in Denver to arrange the sale. At this March 18 meeting, Anderson and Fullerton agreed, on behalf of their respective companies, to form a limited partnership to purchase the property from WYORCO.

4.  The intent of, and the agreement between, the parties was to form a limited partnership with Westover Hills Management as the sole general partner and with Envirosearch and AGFC as limited partners.

5.  Anderson, on behalf of AGFC, and Fullerton, on behalf of Westover Hills Management and Envirosearch, executed a certificate of limited partnership. This certificate was filed with the Wyoming Secretary of State on October 16, 1981. This certificate lists the three companies, Envirosearch, Westover Hills Management, and AGFC, as both general and limited partners.

6.  Subsequent to the original filing, the parties became aware that the original certificate as filed did not reflect their intent to form a limited partnership with Envirosearch and AGFC as limited partners only.

7.  On May 5, 1984, an amended certificate of limited partnership, executed by James Anderson on behalf of AGFC, and Dale Fullerton on behalf of Westover Hills Management and Envirosearch, was filed with the Wyoming Secretary of State. This amended certificate correctly reflected the intent of the parties to form a limited partnership. It listed Westover Hills Management as the sole general partner and listed Envirosearch and AGFC as limited partners.

8.  On February 12, 1984, AGFC assigned all of its right, title, and interest as a limited partner in Westover Hills, Limited to its subsidiary, AGLIC. The assignment purports to be effective as of April 20, 1983.

### DISCUSSION

█  The question of existence of a limited partnership is to be determined by state law. *In re Wallen*, 43 B.R. 408 (Bkcy.D.Id. 1984).

█  In 1979, Wyoming adopted the Revised Uniform Limited Partnership Act. Wyo.Stat. § 17–14–201, et seq. (1977).

The revised Act has in common with its predecessor, the Uniform Limited Partnership Act, the fundamental assumption that the limited partners are not general partners who secure limited liability by simply filing a certificate. The official comment

to Section 1 of the Uniform Limited Partnership Act states this basic assumption.

"[t]he person who contributes the capital, though in accordance with custom called a limited partner, is not in any sense a partner. He is, however, a member of the association."

The official comment further states,

"The limited partner not being in any sense a principal in the business, failure to comply with the requirements of the act in respect to the certificate, while it may result in the nonformation of the association, does not make him a partner or liable as such. The exact nature of his ability in such cases is set forth in Sec. 11."

Thus, if the parties intend to form a limited partnership, the failure to comply with the Wyoming Limited Partnership Act would not, as petitioners argue, result in the formation of a general partnership. Rather, under the theory of the Uniform Act, such noncompliance would result only in the nonformation of the limited partnership.

■ It is clear that the parties at all times intended to form a limited partnership. However, the original certificate of limited partnership did not correctly reflect their intentions. In such a situation, the Revised Uniform Act provides a remedy to cure such defective compliance with the requirements for Limited Partnership. The applicable Wyoming Statute provides,

*"Person Erroneously Believing Himself Limited Partner.*

"(a) Except as provided in subsection (b) of this section, a person who makes a contribution to a business enterprise and erroneously but in good faith believes that he has become a limited partner in the enterprise is not a general partner in the enterprise and is not bound by its obligations by reason of making the contribution, receiving distributions from the enterprise, or exercising any rights

of a limited partner, if, on ascertaining the mistake, he:

"(i) Causes an appropriate certificate of limited partnership or a certificate of amendment to be executed and filed; or

"(ii) Withdraws from future equity participation in the enterprise."

Wyo.Stat. § 17–14–404 (1979).

Thus, under Wyoming law, an intended limited partner who realizes that a limited partnership has been imperfectly formed, may take either alternative provided in subsection (a) to insure the retention of limited partnership status.[2]

In the present case, when AGFC realized that the certificate of limited partnership had erroneously listed them as a general, rather than as a limited, partner they caused an appropriate certificate of amendment to be executed and filed. Thus, AGFC did not lose its intended status as a limited partner, having corrected the defect in accordance with Wyo.Stat. § 17–14–405. In view of these considerations, the court concludes, without difficulty, that the debtor is a limited partnership. *In re Rey Cafe Coffee Services, Ltd.,* 24 B.R. 680, 681 (Bkcy.D.N.M.1982); *The Outlet Company v. Wade,* 377 So.2d 722, 723 (Fla.Dist.Ct. App.1979); *Voudouris v. Heller & Co.,* 560 S.W.2d 202, 206 (Tex.Civ.App.1977); *United States v. Coson,* 286 F.2d 453 (9th Cir. 1961).

■ In deciding that the debtor is a limited partnership for purposes of filing a voluntary Chapter 11 case, the court does not reach the issue of whether, under Wyoming law, the individual limited partners may be liable to third parties in connection with their involvement in the debtor's business and financial affairs.

Although an intended limited partner does not become a general partner by reason of noncompliance with the Act alone, such a limited partner may, by reason of

**2.** Subsection (i) is an important alternative remedy added by the Revised Uniform Limited Partnership Act. *cf.* U.L.P.A. § 11.

other factors, lose his limited liability and become "liable as" a general partner.[3]

If a limited partner is found to be "liable as" a general partner to third parties, it does not change the fundamental relations of the partners *inter se*. It is the status of the partners *inter se* and not their potential liability to third parties that determines the existence of a general partnership or a limited partnership, for the purposes of determining eligibility of relief under the Bankruptcy Code. *In re Camp Carson Mines, Limited,* 36 B.R. 554, 555 (Bkcy.D. Fla.1983); *In re Verses I,* 15 B.R. 48, 50–51 (Bkcy.D.Pa.1981).

■ Having found that Westover Hills, Ltd., is a limited partnership, the court next turns to the effect that this determination has on the voluntary and involuntary petitions.

As noted above, the general partner of the limited partnership filed a voluntary Chapter 11 petition on December 11, 1983. Where a limited partnership contains only one general partner, and that general partner files a voluntary petition, then the bankruptcy case is properly commenced. *In re Bel Air Associates, Ltd.,* 4 B.R. 168, 171 (Bkcy.W.D.Okla.1980). It is clear that Westover Hills Management was eligible, as the sole general partner, to commence a voluntary petition. Bankruptcy Rule 1004(a). In a voluntary Chapter 11 case, the filing of the petition constitutes an Order for Relief. 11 U.S.C. § 301. Thus, it is apparent that this case was properly commenced on December 11, 1983 as a voluntary petition.

■ Bankruptcy Rule 1015(a) provides that if two or more petitions are pending in the same court by or against the same debtor, the court may order consolidation of the cases. This rule is derived from former Bankruptcy Rule 117(a). Consolidation is permitted only when two or more petitions are pending in the same court

against the same debtor. Collier on Bankruptcy, 14th Ed., Vol. 12, ¶ 117.02, p. 1–93.

Few courts have considered the situation in which nearly simultaneous voluntary and involuntary petitions are filed against the same debtor. The only reported decision touching on this issue is *In re Lamb,* 40 B.R. 689 (Bkcy.D.N.Y.1984). In the *Lamb* case, the filing of an involuntary petition against an individual in a New York Bankruptcy Court was followed, a week later, by the individuals filing of a voluntary petition in a Bankruptcy Court in Kentucky. The trustee then filed, in the New York Bankruptcy Court, a motion under Bankruptcy Rule 1014(b) to determine which bankruptcy case should proceed. The court reserved its decision on which case should proceed pending a hearing allowing the parties to present additional evidence. Judge Kelly did, however, set forth his analysis of the principles applicable where a voluntary and an involuntary petition are filed against the same debtor in different bankruptcy courts. The court stated that the filing of a voluntary petition is not a sufficient defense to an involuntary petition. *Id.* at 693. Further, the court stated,

> "* * * Lamb argues that the later-filed voluntary case should proceed because an order for relief may never be entered on the earlier involuntary petition. This argument ignores the more serious problems that will result if the voluntary case proceeds and an order for relief is entered on the earlier involuntary petition. The involuntary case will be the first case and should take precedence. The rights of the trustee in the involuntary case generally will accrue at the time of filing of the involuntary petition. He may be able to require the trustee and other parties in the voluntary case to undo what they have done. * *"

*Id.* at 692

Judge Kelly then concluded that the "proper procedure is to ask the court

---

**3.** Subsection (b) of Wyo.Stat. § 17–14–404 specifies circumstances where a limited partner may become "liable as" a general partner. *See also,* Wyo.Stat. § 17–13–308 (1957) and Wyo.Stat. § 17–14–403 (1979).

where the involuntary petition was filed to let the voluntary case proceed, but in such a way that the rights of the petitioning creditors will be protected." *Id.*

In the present case, of course, the petitions have been filed in the same court. Thus, the court concludes that the question of which case should proceed is properly before it.

It is apparent the petitioner, Westover Hills Management, while uncertain of the debtor's status as an entity, was determined that the assets of the debtor be administered under the provisions of the Bankruptcy Code. The relief sought by the involuntary petition is already in effect. The rights of no creditor or petitioner will be prejudiced if this court administers the case as a voluntary rather than as an involuntary one. The filing of the petitions was only separated by a period of about two hours. In so short a span of time, there is not the potential for the accrual of conflicting rights discussed in the *Lamb* decision opinion. No proceedings have been brought in the involuntary case that have not also been properly brought in the voluntary case.

Petitioners attempted to treat Westover Hills Ltd., a general partnership, in Case No. 83–00791 as an entity separate and distinct from Westover Hills Ltd., a limited partnership, in Case No. 83–00792. This seems to the court to be hypertechnical, but is, perhaps, the best basis upon which to resolve the disposition of these cases. The court will, therefore, dismiss the involuntary case without entry of an order for relief.

### CONCLUSIONS OF LAW

1. The jurisdiction of the court is properly invoked under 28 U.S.C. § 1334 and the Order of Reference of the United States District Court for the District of Wyoming, dated July 19, 1984 entered pursuant to 28 U.S.C. § 157. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2. The voluntary Chapter 11 petition filed by Westover Hills Management, the sole general partner of the debtor, constituted the entry of the Order of Relief in Case No. 83–00792.

3. The court concludes that, under the facts of this case, voluntary case No. 83–00792 should take precedence and that the involuntary petition, No. 83–00791, should be dismissed.