**In re MAP 1978 DRILLING PARTNER-SHIP, et al., Debtor.**

**Bankruptcy No. 587–50310–11.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 30, 1989.

Larry J. Bridgefarmer, Gardere & Wynne, Dallas, Tex., for Equity Sec. Holders' Committee.

J. Maxwell Tucker, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for Trustee.

MEMORANDUM OF OPINION ON VOTING UNDER THE PLANS

JOHN C. AKARD, Bankruptcy Judge.

The Trustee, Walter C. Kellogg, filed a motion to determine the method of voting by limited partners on competing plans in these Chapter 11 cases.

*Facts*

On January 31, 1986, Mid–America Petroleum Corporation (MAP) filed its Chapter 11 petition. MAP is the general part-

ner in twenty oil and gas limited partnerships which filed for relief under Chapter 11 on February 6, 1986. The partnership cases were administratively consolidated. Two plans of reorganization were filed. Both plans reorganize MAP into a new corporation and reorganize the limited partnerships. The Trustee moved the Court to determine if § 1126(d) of the Bankruptcy Code[1] governs the voting procedures of the limited partners to the exclusion of any agreement between the partners and of state partnership law.

### The Trustee's Position

The Trustee averred Congress intended plan proponents to sell partnership assets, liquidate the partnership and reach other agreements on governing a business enterprise via a plan of reorganization, notwithstanding a non-bankruptcy law requirement to the contrary. He argued that pursuant to the Supremacy Clause of the United States Constitution bankruptcy law preempted state law to the contrary. He stated that to impose a state law voting requirement, more stringent than the two-thirds test of § 1126(d), would place unnecessary obstacles to and burdensome requirements on reorganization of business enterprises—none of which Congress envisioned.

### The Equity Security Holders Committee's Position

The Equity Security Holders Committee (Committee)[2] contended that state partnership law, as agreed to by the partners in the partnership agreement, governed balloting by the limited partners. The Committee alleged that the proposed plans were designed to acquire the partnership assets in order to dissolve each partnership; therefore, the provisions of the limited partnership agreements which dealt with the sale or transfer of substantially all of the assets of each respective partnership, the dissolution of the partnership or the replacement of its general partner should govern. The Committee argued that the use of § 1126 to determine limited partners' voting rights would violate the partnership agreements.

### Analysis

#### A. Partnership Law

The Texas Revised Limited Partnership Act, art. 6132a–1, § 3.02 (Vernon 1988), grants partners the power to contract, by written agreement, for legal rights and duties with respect to voting and other actions. By the following provisions the MAP limited partnership agreements require the affirmative vote of limited partners holding at least a majority of interests in the limited partnership:[3]

Article VI: Management. ¶ 6.5(m) *Sale of Substantially All Assets.* Except in connection with the termination of the Partnership pursuant to Article XI hereof, the General Partner may not sell all or substantially all the Assets of the Partnership without the affirmative vote or written consent of Limited Partners who are the record holders of a majority or more of the outstanding Units....

Article IX: Transfer of Partnership Interests. ¶ 9.2 *Transfer of General Partner's Interest.* The General Partner's interest in the Partnership shall not be assignable (except in connection with any merger, consolidation or sale of all or substantially all the assets of the General Partner) without the affirmative vote or written consent of Limited Partners who are the record holders of at least a majority of all Units outstanding....

Article XI: Termination and Winding Up. ¶ 11.1 *Dissolution.* The Partnership will be dissolved upon the occurrence of any of the following events....

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

2. This Committee was formed by the U.S. Trustee to represent the interests of the limited partners.

3. The provisions of all partnership agreements are substantially the same.

(b) The bankruptcy, insolvency or dissolution (except dissolution as a consequence of merger, sale of assets, amalgamation, consolidation or other corporate reorganization) of the General Partner or the occurrence of any other event which would permit a trustee or receiver to acquire control of the affairs of the General Partner;

.      .      .      .      .

(d) The vote of 51% or more in interest of all Limited Partners after a proposal to dissolve has been made by at least 10% in interest of all Limited Partners.

### B. Bankruptcy Code

Balloting by equity security holders is described in § 1126(d) which provides that

A class of interests has accepted a plan if such plan has been accepted by holders of such interests ... that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests ... that have accepted or rejected such plan.

The House Report (Reform Act of 1978) contained the following explanation of § 1126(d):

Subsection (d) provides similar treatment for classes of equity securities, but dispenses with the one-half in number required. A class of equity securities has accepted a plan if at least two-thirds in amount of the outstanding securities actually voted are voted for the plan.... [4]

The Senate Report stated:

Under subsection (d), with respect to a class of equity securities, it is sufficient for acceptance of the plan if the amount of securities voting for the plan is at least two-thirds of the total actually voted.[5]

Section 101(15)(B) characterizes the limited partners' interest in the limited partnership as an equity security.[6] Section 101(16) defines an equity security holder to be a "holder of an equity security of the debt-or." Therefore, under the Code, a limited partner is characterized as an equity security holder.

Bankruptcy Rule 3018(a)(3) provides that a plan may be accepted or rejected by "an equity security holder of record at the date the order approving the disclosure statement is entered whose interest has not been disallowed." Thus, a limited partner whose interest has not been disallowed is entitled to vote on the plan.

### C. The Issues

In what manner will the votes of the limited partners be counted to determine whether the class of limited partnership interests (equity securities) has accepted or rejected the plan? Does the absolute majority standard of the partnership agreement apply to determine the necessary requirements for approval of the plan, or does the Bankruptcy Code standard of two-thirds in amount of those actually voting govern? To resolve these issues, the Court must determine whether federal law or state law governs voting requirements for the approval of a plan of reorganization.

### D. Discussion

Although both the House and Senate Reports set forth the voting standard, neither addressed the specific issue presented in this case. This Court found no case which addressed this specific issue under the Code, or the Act. It is significant, however, that every case found which discussed aspects of the voting process followed the procedure set forth in § 1126(d).

Under the former Bankruptcy Act, as a result of the mandatory application of the absolute priority rule, shareholders of a Chapter X debtor did not have a right to vote on the plan. An exception to the rule existed if the debtor was found to be solvent. Section 179 of the Bankruptcy Act stated in pertinent part:

After a plan has been accepted in writing, filed in court, by or on behalf of creditors holding two-thirds in amount of

---

**4.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 410 (1977).

**5.** S.Rep. No. 989, 95th Cong., 2d Sess. 123 (1978).

**6.** § 101(15) states "equity security" means—(B) interest of a limited partner in a limited partnership....

the claims filed and allowed of each class, and, if the debtor has not been found to be insolvent, by or on behalf of stockholders holding the majority of stock, of which proofs have been filed and allowed, of each class ... the judge shall fix a hearing ... for the consideration of the confirmation of the plan....

Thus, if the Chapter X debtor was found to be solvent, the stockholders were enfranchised. The standard applied in determining their acceptance was an absolute majority of the outstanding shares of stock. 5 *Collier on Bankruptcy,* ¶ 1126.04 (15th Ed.1979). Section 1126(d) of the Code modified the Chapter X standard to require a two-thirds vote of those actually voting on the plan. *Id.*

In a recent case, *In re Sovereign Group 1984–21 Ltd.,* 88 B.R. 325 (Bankr.D.Colo. 1988) the Court explored the nature and effect of partnership agreements on the Chapter 11 reorganization process. In *Sovereign* the debtor's limited partnership agreement provided that a new general partner could be admitted as a successor upon the consent of the special limited partner and a majority in interest of the limited partners. The Court ruled that since the partnership agreement required only the consent of a majority of the limited partners for replacement of the general partner, the two-thirds requirement of § 1126 satisfied the Court's ruling that a partnership plan of reorganization must comply with the terms of the partnership agreement when restructuring the management of the partnership. *Id.* at 331. Implicit in the court's ruling is that by meeting the federal two-thirds standard for voting, the partnership agreement standard will necessarily be satisfied. This assumption, however, proves to be false. The federal standard requires two-thirds of those *actually* voting, while the partnership agreement, required an outright majority. This could lead to an anomaly when less than a major-

ity actually vote. The result could be an approval under the federal standard, but a disapproval under the partnership standard. This dilemma is heightened by the fact that seldom do a majority of the members of any class actually vote on a plan. Applying the partnership standard could result in a more stringent standard for approval than that envisioned by Congress. The *Sovereign* Court based its holding on the rationale that a court should uphold the sanctity of partnership agreements in restructuring a partnership through a bankruptcy reorganization. *Id.* at 329.

*In re Harms,* 10 B.R. 817 (Bankr.D.Colo. 1981), an earlier decision from the same Court, held that, when a general partner filed under Chapter 11 and became a debtor-in-possession, an inherent conflict of interest resulted in its status in the limited partnership which precluded it from remaining general partner. Applying the reasoning of *Harms* to MAP necessitates a change of general partner irrespective of how the limited partners might vote. In this case, both plans provide that the stock of MAP will be canceled and MAP will cease to exist. Therefore, a new general partner is necessary if the limited partnerships are to be reorganized. Each plan designates a new general partner.

State laws contrary to the laws of Congress are invalid under Article VI of the United States Constitution, the Supremacy Clause. *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824). The United States Supreme Court confirmed the applicability of the Supremacy Clause to the Federal Bankruptcy Act in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The voting process is both integral and essential to the bankruptcy reorganization process. Had Congress intended a different rule to apply to limited partnership voting, it would have said so.[7]

---

7. Congress was undoubtedly aware that state corporation laws might mandate specific voting requirements for certain purposes. In passing the Bankruptcy Code, Congress chose not to look to state law for corporate voting calculations; rather, it established its own voting rules in § 1126(b). See e.g., Tex.Bus.Corp.Act.Ann. art. 5.10, (Vernon, 1980) which requires the affirmative vote of two-thirds of the outstanding shares for the sale of all or substantially all of the assets of the corporation not made in the usual course of business.

### Conclusion

Since the partnership agreement provision in question potentially conflicts with § 1126(d) of the Bankruptcy Code, the Court concludes that federal law pre-empts state law in determining how votes will be counted for the approval of a plan.

If a limited partnership constitutes a separate class, the vote of the class will be determined by the votes of the interests in the limited partnership pursuant to § 1129(d). In making that calculation, MAP's vote and any insiders' vote will be disallowed. MAP is a general partner in each limited partnership. If there are other general partners, they are insiders.

If there is more than one limited partnership in a class, each limited partnership will be deemed to have one vote, and a majority vote will be necessary to bind the class. The vote of each individual limited partnership will be determined as if that limited partnership were in a separate class.

ORDER ACCORDINGLY.[8]

---

**8.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.