IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-4765

_____


IN THE MATTER OF:   HARRY S. PHILLIPS and
                    PHILLIPS & PHILLIPS, LTD.,
                    Debtors.

MARTHA J. PHILLIPS,

                              Appellant-Cross-Appellee,

                    versus

FIRST CITY, TEXAS )) TYLER, N.A., HARRY S.
PHILLIPS, and PHILLIPS & PHILLIPS, LTD.,

                              Appellees-Cross-Appellants.

_____

Appeals from the United States District Court for
            the Eastern District of Texas
_____

(   July 2, 1992   )

Before SNEED,[1] REAVLEY and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:

The dispositive issue in this appeal is whether Harry S.

Phillips (HSP) had legal authority to file a voluntary petition

under the Bankruptcy Code's Chapter 11 on behalf of Phillips &

Phillips, Ltd. (P&P) after filing a similar petition on his own

behalf.  The bankruptcy court held that Texas law did not deprive

HSP of that authority.  On appeal, the district court held that

_____

    [1] Senior Circuit Judge of the Ninth Circuit, sitting by
designation.

Texas partnership law would deprive HSP of authority, but that federal Bankruptcy Rule 1004(a) preempted this Texas law. We hold that Texas law deprived HSP of authority to file bankruptcy on P&P's behalf, and we find no federal law that preempts this Texas law. Consequently, we reverse the district court's order that affirms the bankruptcy court's confirmations of the reorganization plans of HSP and P&P.

## I. BACKGROUND

Martha J. Phillips (MJP) and HSP divorced in 1976. Rather than divide their extensive real estate and mineral interests, they created P&P as a limited partnership and transferred their community property to it. Their partnership agreement states that MJP and HSP each own half of P&P and HSP is its sole general partner.

In February 1988, a Texas court issued a Final Judgment in accord with a jury's findings that HSP breached the partnership agreement and his fiduciary duties to MJP. The Final Judgment awarded MJP damages against both HSP and P&P, dissolved P&P, and directed HSP, "as general partner of Phillips & Phillips," to wind up P&P within 90 days by paying P&P's unsecured creditors with its liquid assets and transferring an undivided one-half interest in all of P&P's remaining property to MJP subject to all existing encumbrances on that property.

HSP appealed from the part of the court's order that dissolved P&P, and MJP appealed from the court's determination of damages. In January 1989, HSP asked the Texas Court of Appeals

2

to dismiss his appeal.  HSP filed a voluntary petition for bankruptcy protection under 11 U.S.C. §§ 1101 *et seq.* (Chapter 11) for his personal estate on January 17, 1989, two days before the Texas Court of Appeals was to hear oral argument on MJP's appeal.[2]  Then, on February 2, 1989, the day before a Texas court was to have considered MJP's motions for contempt and appointment of a receiver for P&P, HSP filed a voluntary petition for protection under Chapter 11 on behalf of P&P.  HSP has not yet complied with the Final Judgment's requirement that he wind up P&P.

MJP asked the bankruptcy court to dismiss P&P's petition, arguing, *inter alia*, that HSP did not have authority to file the petition on P&P's behalf.  The bankruptcy court held that Texas partnership law did not prohibit HSP, as the sole general partner of P&P, from filing a Chapter 11 petition on P&P's behalf even though he had already filed one on his own behalf.  The court then held that, even if Texas law did prohibit HSP from placing P&P in Chapter 11 proceedings, contrary provisions of the federal Bankruptcy Code preempted Texas law under the Constitution's Supremacy Clause.

The bankruptcy court also found that:

> Any attempt to liquidate the assets of
> Phillips & Phillips, Ltd. and Harry S.
> Phillips other than through the present
> pending Chapter 11 proceedings could result

---

[2] The bankruptcy court permitted MJP to prosecute her appeal; Texas courts determined that HSP owes MJP $535,302.14 for breaching contractual and fiduciary duties.  *See Phillips v. Phillips*, 820 S.W.2d 785, 786-88 & n.2 (Tex. 1991).

> in the diminution of both bankruptcy estates
> to the point where not all creditors or
> certain classes of creditors and/or parties
> in interest would be paid.

In November 1989, the court confirmed plans of reorganization for both HSP and P&P under which HSP, as debtor-in-possession with court supervision, was to liquidate P&P's assets over a four-year period, pay all creditors, and share any remaining equity equally with MJP.

The district court affirmed the bankruptcy court's plan confirmations after ruling that, although Texas partnership law prohibits a bankrupt partner from placing a partnership in Chapter 11 proceedings, this law conflicts with Bankruptcy Rule 1004(a). The district court concluded that, under the Constitution's Supremacy Clause, Bankruptcy Rule 1004(a) renders HSP's personal bankruptcy legally irrelevant to his authority to place P&P in Chapter 11 proceedings.

## II. DISCUSSION

MJP attacks the district court's order affirming the bankruptcy court's plan confirmations on several grounds. We agree with her argument that the courts erroneously recognized HSP's authority to file a voluntary bankruptcy petition on P&P's behalf, and this error alone precludes confirmation of either plan. We review the legal conclusions of the bankruptcy court and the district court *de novo*. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1252 (5th Cir. 1986).

4

A. HSP'S AUTHORITY UNDER TEXAS LAW

Texas' Uniform Partnership Act provides that a "partnership is in no case bound by any act of a partner after dissolution ... [w]here the partner has become bankrupt." TEX. REV. CIV. STAT. ANN. art. 6132b § 35(3)(b) (Vernon 1970).[3] We read this language to prohibit HSP from placing P&P in Chapter 11 proceedings after the Texas court dissolved P&P and HSP secured Chapter 11 protection for himself.

Professor Bromberg, the chief draftsman of Texas' Uniform Partnership Act, suggests that "the reason for [section 35(3)(b)] may be the fear of binding the partnership to unwise transactions entered into by the bankrupt partners." Allan R. Bromberg & Larry E. Ribstein, BROMBERG & RIBSTEIN ON PARTNERSHIP § 7.16(d) (1991). More specifically, upon securing bankruptcy-court protection, a general partner who becomes a debtor-in-possession[4] of her personal estate necessarily assumes responsibilities to her creditors that conflict with her responsibilities to her co-

---

[3] Under Texas law, bankruptcy of any partner or the partnership causes dissolution of the partnership. TEX. REV. CIV. STAT. ANN. art. 6132b § 31(5). Thus, section 35(3)(b) simply removes a bankrupt partner's authority to act on behalf of partnerships.

[4] If the bankruptcy court appoints a trustee instead of leaving the debtor-partner in control of her bankruptcy estate, the trustee assumes all of the debtor's partnership interests. 11 U.S.C. §§ 323 (trustee "is the representative of the estate"), 541(a)(1) (voluntary petition creates an estate that contains "all legal or equitable interests of the debtor in property" except power that the debtor may only exercise for the benefit of a separate entity). Thus, federal law precludes a bankrupt partner from relying on her status as a partner to act on behalf of a partnership after the court has appointed a trustee to administer her estate.

partners. *See Skeen v. Harms (In re Harms)*, 10 B.R. 817, 822 (Bankr. D. Colo. 1981) (sole general partner of limited partnership who becomes debtor-in-possession of personal estate under Chapter 11 generates "an inherent conflict of interest which precludes him from remaining as general partner" because partners owe fiduciary duty to co-partners and debtors-in-possession owe fiduciary duty to creditors); *In re Map 1978 Drilling Partnership*, 95 B.R. 432, 435 (Bankr. N.D. Tex. 1989) (following *Harms* in requiring avoidance of conflict-of-interest for debtor-partner in Chapter 11 proceedings by conditioning reorganization of limited partnerships on naming of new sole general partner); *In re Royal Gorge Assoc.*, 77 B.R. 277, 278 (Bankr. D. Colo. 1987) ("flagrant conflict of interest" for law firm to represent sole general partner, who was also creditor of partnership, in his voluntary Chapter 7 case, while at the same time representing partnership in its Chapter 11 case). Creditors are wholly dependent on the party controlling an estate in bankruptcy proceedings to protect their interests. Likewise, partners, especially limited partners, must rely on general partners to protect all partners' interests in partnership property. Both the creditors and the partners are interested in the same partnership property. Thus, Texas, which alone regulates the creation and dissolution of business associations within its borders, logically protects non-bankrupt partners from bankrupt partners who acquire responsibilities under federal bankruptcy law that could compromise the interests of the non-

bankrupt partners.

HSP presents three arguments in favor of a contrary interpretation of section 35(3)(b).

*1. Texas' Definition of "Bankrupt"*

First, HSP contends that he has not become "bankrupt" within the meaning of section 35(3)(b) because he filed his voluntary petition under Chapter 11, which facilitates debtor reorganization, as opposed to Chapter 7, which facilitates liquidation. Thus, we must consider whether one who files a voluntary petition for Chapter 11 protection is "bankrupt" within the meaning of Texas partnership law. The Texas Uniform Partnership Act states that "'bankrupt' includes bankrupt under the Federal Bankruptcy Act." TEX. REV. CIV. STAT. ANN. art. 6132b § 2. This is a deceptively simple statement, and we must review some legislative history to properly convey our difficulties in construing section 2.

Congress consolidated federal bankruptcy law in the Bankruptcy Act of 1898. *See* Act of July 1, 1898, c. 541, 30 Stat. 544. At that time, bankruptcy law only facilitated liquidation. Not until 1933 did Congress amend the Bankruptcy Act to permit reorganization of certain entities. *See* Pub. L. No. 72-420, 47 Stat. 1474 (1933). In 1938, Congress amended the Bankruptcy Act with the precursor to Chapter 11 to facilitate general corporate reorganization. *See* Act of June 22, 1938, Pub. L. No. 74-575, 52 Stat. 840 (1938). Until Congress substantially revised the Bankruptcy Act with the Bankruptcy Reform Act of

7

1978, the Bankruptcy Act apparently referred to entities undergoing Chapter 7 liquidation as "bankrupts," and those undergoing Chapter 11 reorganization as "debtors." *See* S. REP. NO. 989, 95th Cong., 2d Sess. 23 (1978), *reprinted in* Historical and Revision Notes following 11 U.S.C.A. § 101(12) at 36 (1979), *and reprinted in* 1978 U.S.C.C.A.N. 5787, 5809.  But the Bankruptcy Reform Act of 1978 removed all references to "bankrupt" in federal bankruptcy law, created the Bankruptcy Code, 11 U.S.C. § 1 *et seq.*, and adopted "debtor" to refer to all who seek protection under the Code, whether they do so through liquidation under Chapter 7 or reorganization under Chapter 11. *See* 11 U.S.C. § 101(12); *see generally* H.R. REP. No. 595, 95th Cong., 2d Sess. 3-5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5965-66 (recounting Reform Act's history and purpose).

When the Texas legislature referred to the "Federal Bankruptcy Act" in enacting section 2 in 1961, it could have meant the Federal Bankruptcy Act as written in 1898, as it stood in 1961, or as amended over time.  The language of section 2 accords with any of these interpretations.  Consistent with the last interpretation, we think that, as a matter of statutory construction and policy, Texas courts would consider one who files a voluntary petition under Chapter 11 "bankrupt" within the meaning of Texas partnership laws.

Section 2 is to be "interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it."  TEX. REV. CIV. STAT. ANN. art. 6132b § 4(4).  Sections 2

and 4(4) are Texas' versions of the Uniform Partnership Act as it existed in 1961. The current version of the Uniform Partnership Act explains that "Federal Bankruptcy Act" in its section 2 explicitly refers to 11 U.S.C. § 1 *et seq.*, the Bankruptcy Code. *See* UNIF. PARTNERSHIP ACT § 2, 6 U.L.A. § 2 (1992 Supp.). Thus, the current National Conference of Commissioners of Uniform State Laws considers the present federal understanding of the term "bankrupt" controlling under section 2 of the Uniform Partnership Act.[5] No federal or state court has addressed the meaning of section 2, but the legislatures of Colorado, Georgia, Pennsylvania, and Rhode Island have specified that "Federal Bankruptcy Act" as used in section 2 means federal bankruptcy law as currently amended. Only California has limited the definition of "bankrupt" under section 2 to Chapter 7 liquidation proceedings. *See id.* ("Action in Adopting Jurisdictions"). Thus, by adopting the majority view of "Federal Bankruptcy Act," our interpretation accords with the mandate of the Texas Uniform Partnership Act's section 4. We also note that section 2 only states what is *included* within "bankrupt" without explicitly limiting that term's significance. We understand Texas, to the extent that its legislature considered the issue now before us,

_____

[5] Federal conflation of the terms "debtor" and "bankrupt" only means that there is no longer any difference between these two terms. The opposite conclusion )) that, for purposes of state laws that retain the term "bankrupt," there is no such thing as "bankrupt" under federal law )) would considerably change the significance of bankruptcy in states' partnership laws. We cannot countenance such a drastic change without some indication of legislative intent or reason for doing so.

9

to have simply ceded to the federal government concurrent authority to define "bankrupt" for purposes of Texas partnership law.

Most importantly, however, we would create an unnecessary loophole in Texas partnership law by interpreting it to treat those who seek Chapter 7 protection differently from those who seek Chapter 11 protection. *See In re Sandy Ridge Devel. Corp.*, 881 F.2d 1346, 1352 (5th Cir. 1989) ("although Chapter 11 is titled 'Reorganization,' a plan may result in the liquidation of the debtor"). Would it follow *Sandy Ridge*, then, that parties who wish to liquidate could simply file their petitions under Chapter 11 to avoid the state-law implications of bankruptcy? We think not.

Only one reported case withheld the label "bankrupt" from an entity that sought Chapter 11 protection: *In re Safren*, 65 B.R. 566, 569-70 (Bankr. C.D. Cal. 1986). We think that *Safren* is wrongly decided. California adopted section 31(5) of the Uniform Partnership Act, which states that "[d]issolution is caused ... [b]y the bankruptcy of any partner or the partnership." The *Safren* court held that filings for protection under Chapter 11 do not invoke section 31(5). *Id.* The court reasoned that the National Conference of Commissioners on Uniform State Laws drafted the Uniform Partnership Act almost 20 years before Congress first amended the liquidation provisions of the Bankruptcy Act to facilitate reorganizations. From this, the court concluded that the drafters of the Uniform Partnership Act

10

only envisioned the extant liquidations when they used the term "bankrupt" in section 31(5). *Id.* But the information available to the drafters of the Uniform Partnership Act is much less important than that available to California's legislature when it adopted section 31(5) in 1949. *See id.* at 569 n.2. By that time, Chapter 11 had existed for eleven years and California's legislature could have understood "bankrupt" to apply to anyone seeking protection under any chapter of the federal bankruptcy laws.

The *Safren* court also based its decision on its understanding of public policy. The court explained as follows:

> If a partnership is to be reorganized and to continue in business, state law should not be permitted to dissolve it. Upon confirmation of a plan of reorganization, the assets of the bankruptcy estate, which was created by the filing of the case, are revested in the partnership, subject to those debts provided for in the plan; unpaid partnership liabilities are discharged. The partnership, like a corporation, then emerges from Chapter 11 to continue in business.
>    In addition, the dissolution of a partnership upon the filing of its Chapter 11 case may have substantial tax consequences, that could render its reorganization difficult or impossible.

*Id.* at 569. The court's entire policy argument concerns how to interpret state law to effectuate a federal objective: partnership reorganization. But the purpose of the state law construed by the court is not to preserve the life of partnerships; as we have previously explained, that law mandates partnership dissolution upon partner bankruptcy to protect the conflicting interests of the many interested parties when the

11

legal nature of the parties' relationships change as a result of federal law. *See generally Woodruff v. Bryant*, 558 S.W.2d 535, 539 (Tex. Civ. App. -- Corpus Christi 1977, writ ref'd n.r.e.) ("Dissolution is an act that actually changes the legal relationship of the partnership, and has nothing to do with whether or not the partnership business is continuing or winding up.").

Thus, we repudiate *Safren* and side with the many bankruptcy courts that have interpreted various states' versions of the Uniform Partnership Act to include Chapter 11 petitioners as "bankrupts" under those states' partnership laws. *See, e.g., In re Sunset Developers*, 69 B.R. 710, 711-12 (Bankr. D. Idaho 1987); *In re Minton Group, Inc.*, 27 B.R. 385, 390 (Bankr. S.D.N.Y. 1983), *aff'd*, 46 B.R. 222 (S.D.N.Y. 1985); *In re Harms*, 10 B.R. at 821-22.[6]

*2. Third Parties*

Next, HSP relies on the title and comments[7] to section 35 to argue that this law only limits the authority of bankrupt partners to bind partnerships to *third parties,* and it does not

___

[6] *See also In re Corky Foods Corp.*, 85 B.R. 903, 904 (Bankr. S.D. Fla. 1988) (completely misreading *Safren* to hold that, while state law includes Chapter 11 petitioners as "bankrupts," some state partnership laws that apply to bankrupts conflict with federal bankruptcy law); *cf. Safren*, 65 B.R. at 570 n.5 (decision rests wholly on interpretation of state law without reaching conflict issue).

[7] Section 35 is entitled "Power of Partner to Bind Partnership to Third Persons after Dissolution." Tᴇx. Rᴇᴠ. Cɪᴠ. Sᴛᴀᴛ. art. 6132b § 35; *see also id.* Source and Comments )) Alan R. Bromberg.

otherwise limit their authority to wind up partnership affairs. HSP explains that he placed P&P in Chapter 11 proceedings as a means of winding up that partnership, and because MJP is an insider and not a third party, section 35 did not prevent him from filing a voluntary petition on P&P's behalf even if he is "bankrupt" under Texas law.  We disagree.

Even if we accept HSP's argument that section 35 only eliminates a bankrupt partner's authority to bind a partnership to third parties, it would preclude him from placing P&P in Chapter 11 proceedings.  By securing bankruptcy protection for P&P, HSP changed the legal relationship between P&P and third-party creditors; indeed, we can scarcely imagine a partnership liquidation or reorganization plan that does not change the legal obligations of )) or "bind"[8] )) a partnership to third parties.

HSP emphasizes one of Professor Bromberg's comments to section 35: "In all instances, authority continues to wind up affairs and complete unfinished transactions...."  TEX. REV. CIV. STAT. ANN. art. 6132b § 35, Source and Comments )) Alan R. Bromberg at 386.  But Texas' legislature mandates that "the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, *not bankrupt,* has the right to wind up the partnership affairs."  TEX. REV. CIV. STAT. ANN. art. 6132b § 37 (emphasis added)*; see also Normandin v. Normandin (In re Normandin)*, 106 B.R. 14, 16 (Bankr. D. Mass.

---

[8] *See* BLACK'S LAW DICTIONARY 153 (5th ed. 1979) (to "bind" is "to obligate [or] place under definite duties or legal obligations").

13

1989) (interpreting Massachusetts' identical section 37 to deny partner who files a bankruptcy petition the right to participate in wind-up process). Moreover, both immediately before and after the comment that HSP relies upon, Professor Bromberg acknowledges that section 37 limits partners' authority to wind up a partnership's affairs. TEX. REV. CIV. STAT. ANN. art. 6132b § 35, Source and Comments at 384, 386. He notes that sections 35 and 37 "are rather complicated and sometimes overlap." *Id.* at 384. While we cannot say what Professor Bromberg's comment to section 35 means, we refuse to add the gloss to section 35 that HSP advocates when that gloss conflicts with section 37, and is nowhere supported in the text of section 35.

*3. MJP's Consent*

Finally, First City, Texas - Tyler, N.A., a creditor of HSP and P&P who sides with HSP in this appeal, argues that HSP's authority to wind up P&P derives from the Final Judgment, and because MJP did not challenge this aspect of the Final Judgment, HSP's authority to wind up P&P is legitimated by consent. But if MJP consented to anything, she consented to having HSP wind up P&P within 90 days by conveying to her an undivided one-half interest in all of P&P's real estate and mineral interests. She has consistently contested HSP's authority to manage P&P's assets beyond the Final Judgment's directives, and she sought a receiver for P&P as a result of HSP's disregard for the Final Judgment.

Moreover, HSP was not bankrupt when he received authority to wind up P&P under the Final Judgment. The Texas court that

14

issued the Final Judgment did not sanction a conflict-of-interest on HSP's part because none existed at that time.  The court could appropriately depend on section 35(3)(b) to protect MJP and HSP's creditors from any conflict that would arise if HSP sought bankruptcy protection after the Final Judgment, and nothing in the Final Judgment is inconsistent with this understanding.

We conclude that, under Texas law, HSP lacked authority to file a voluntary Chapter 11 petition on P&P's behalf.

B. FEDERAL PREEMPTION OF TEXAS LAW

While the district court understood Texas law to divest HSP of authority to act on P&P's behalf after he sought Chapter 11 protection, it held that Bankruptcy Rule 1004(a) negates the effect of section 35(3)(b) in this case.  FED. BANKR. R. 1004(a) states: "A voluntary petition may be filed on behalf of the partnership by one or more general partners if all general partners consent to the petition."  The district court cited *In re Westover Hills, Ltd.*, 46 B.R. 300, 305 (Bankr. D. Wyo. 1985) in support of its decision that rule 1004(a) preempts section 35(3)(b).  The *Westover Hills* court interpreted rule 1004(a) to mean that, "[w]here a limited partnership contains only one general partner, and that general partner files a voluntary petition, then the bankruptcy case is properly commenced."  *Id.* But the sole general partner in *Westover Hills* was not bankrupt when it filed a voluntary petition on behalf of the partnership, and the *Westover Hills* court did not address any conflict between federal and state law.  Thus, while the *Westover Hills* court's

interpretation of rule 1004(a) is correct on the facts of that case, it is irrelevant to this case.

Whether rule 1004(a) preempts section 35(3)(b) depends on whether we find an actual conflict between federal and state law. *See California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280-81, 107 S.Ct. 683, 689 (1987); *Perry v. Mercedes Benz of North Am., Inc.*, 957 F.2d 1257, 1261 (5th Cir. 1992).[9]  An actual conflict "occurs either because 'compliance with both federal and state regulations is a physical impossibility,' or because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Guerra*, 479 U.S. at 281, 107 S.Ct. at 689 (citations omitted).

We thus examine the operation and purpose of rule 1004(a) and section 35(3)(b) to determine whether they conflict.  Rule 1004(a) provides that any "general partner" may file a voluntary petition on behalf of a partnership.  But no federal law defines "general partner;" this is exclusively the task of state partnership law.  *See Westover Hills*, 46 B.R. at 303-05 (applying Wyoming law to determine whether a partner is a limited or general partner for purposes of rule 1004(a)).  Texas defines a general partner as one who has "all the rights and powers and [is] *subject to all the restrictions and liabilities of a partner in a partnership without limited partners*."  TEX. CIV. STAT. ANN. art. 6132a § 10(a) (emphasis added).  Section 35(3)(b) is one of

---

[9] The parties raise, and we recognize, no issue concerning either express or implied preemption.  *See id.*

16

these restrictions that defines a "general partner" in Texas.  An entity that has all of the rights and responsibilities of a general partner under Texas law, but can also act on behalf of the partnership after filing for bankruptcy protection, is something more than, and therefore different from, a general partner under Texas law.

Thus, when rule 1004(a) employs the term "general partner," it either imports all authority limitations with the definition of "general partner" from state law or, pursuant to the Supremacy Clause, it augments the authority of those whom states label "general partner."  Any such augmentation constitutes a substantive change in the authority of general partners.  But when Congress accorded the Supreme Court authority to promulgate the Bankruptcy Rules, it stated, "[s]uch rules shall not abridge, enlarge, or modify *any* substantive right."  28 U.S.C. § 2075 (emphasis added); *see also* FED. BANKR. R. 1001 (Bankruptcy Rules "govern *procedure* in United States Bankruptcy Courts") (emphasis added); *In re Hanover Indus. Mach. Co.*, 61 B.R. 551, 552 (Bankr. E.D. Pa. 1986) ("the [Bankruptcy] Code defines the creation, alteration or elimination of substantive rights but the Bankruptcy Rules define the process by which these privileges may be effected").  So rule 1004(a), by itself, cannot augment the authority of what states define as "general partners."

The argument could be made that rule 1004(a) simply

implements 11 U.S.C. § 301,[10] in which *Congress* augmented the authority of general partners by providing: "A voluntary case under a chapter of [title 11] is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter."  But nothing in section 301 indicates that every entity that may be a debtor under the Bankruptcy Code is entitled to file a voluntary petition; nor does section 301 make any attempt whatsoever to address the countless details that attend questions of authority to act on behalf of a business entity.  *See* H.R. 8200, H.R. REP. NO. 598 at 196, *reprinted in*, 1978 U.S.C.C.A.N. at 6157 ("*Title 11* does not define 'partner' or 'partnership'; the definitions are left to nonbankruptcy law as construed by the bankruptcy court.") (emphasis added).

For many years, courts have consistently looked to state law to determine whether a person has authority to file a voluntary petition on behalf of a corporation.  In *Grand Lodge, Knights of Pythias v. O'Connor*, 95 F.2d 477, 478 (5th Cir. 1938) the officers of a corporation that was involved in Louisiana receivership proceedings filed a petition for reorganization under federal bankruptcy law.  This court looked exclusively to Louisiana law to determine that the officers were without authority to file the petition.  *Id.* at 479.  Moreover, this court relied on Louisiana law concerning the significance and

---

[10] *See* Advisory Committee Note to FED. BANKR. R. 1004 in 11 U.S.C.A. (West 1984) (rule 1004(a) "complements" § 301).

18

timing of corporate dissolution to determine that the corporation "may not be reorganized in bankruptcy." *Id.* Throughout the many revisions to federal bankruptcy law, courts continue to resolve authority-to-file disputes according to state law. *See In re Quarter Moon Livestock Co.*, 116 B.R. 775, 778 (Bankr. D. Idaho 1990) ("the authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law") (citing *In re Crescent Beach Inn, Inc.*, 22 B.R. 155 (Bankr. D. Me. 1982)); *In re Bel-Aire Invest., Inc.*, 97 B.R. 88, 89-90 (Bankr. M.D. Fla. 1989) ("It is well established that since the Bankruptcy code itself does not establish the requisites for the initiation of a voluntary corporate bankruptcy case, the validity of all the individuals acting on behalf of the corporation must be determined with reference to the laws of the State in which the corporation was chartered."; recognizing that application of state law would render corporation unable to file a voluntary petition) (citing *In re Autumn Press, Inc.*, 20 B.R. 60 (Bankr. D. Mass. 1982); *Taylor v. Markus Enterprises, Inc. (In re Markus Enterprises, Inc.)*, 91 B.R. 459, 460 (M.D. Tenn 1988) ("Whether the debtor, in light of its dissolution, retains the capacity to file a petition under the Bankruptcy Code, Chapter 11, is a matter of the law of [Tennessee]."); *see also In re Sunset Developers*, 69 B.R. at 712 (as a matter of Idaho law, partner who filed for Chapter 11 protection lacks "authority as a general partner to bind the partnership to an involuntary bankruptcy petition"). Without further direction from Congress, we will

19

continue to look to state law to determine which people have authority to seek federal bankruptcy protection on behalf of state-created business entities.

HSP cites *In re Rittenhouse Carpet, Inc.*, 56 B.R. 131 (Bankr. E.D. Penn. 1985) in arguing that section 35(3)(b) conflicts with federal law. *Rittenhouse* concerns a conflict of state partnership law with 11 U.S.C. § 365(e), and has nothing to do with rule 1004(a) or section 301. *Id.* at 132-33.[11] We discuss section 365 because of the possibility that HSP raises it as an alternative ground for finding a conflict with Texas law that the district court did not consider.

Section 365 provides, in part:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time

---

[11] By addressing HSP's argument that is based on *Rittenhouse*, we do not imply that we agree with that case's outcome or rationale. In *Rittenhouse* and at least two other cases, courts have applied section 365(e)(1) to permit the sole general partner of a limited partnership to retain her general partner status despite statements in the partnership agreement and state law that deprived her of general partner status when she filed a Chapter 11 petition on her own behalf. *Rittenhouse*, 56 B.R. at 132-33; *In re Fidelity Am. Mortg. Co.*, 10 B.R. 781 (Bankr. E.D. Pa. 1981); *Corky Foods*, 85 B.R. at 904. But none of these courts considered the significance of section 365(e)(2), or the then virtually identical 11 U.S.C. § 365(c), which several courts have relied upon to reach the exact opposite conclusion than that reached by the courts in *Rittenhouse et al*. *See Sunset Developers*, 65 B.R. at 712-13; *Harms*, 10 B.R. at 821-22; *see also Minton*, 27 B.R. at 390-91 (following *Harms*); *cf. In re Fryar*, 99 B.R. 747, 750 (Bankr. W.D. Tex. 1989) (Congress precluded *Harms'* reading of section 365(c)(1) without changing the parallel personal-service provision of section 365(e)(2)).

20

after the commencement of the case solely because of a provision in such contract or lease that is conditioned on))

    (A) the insolvency or financial condition of the debtor at any time before the closing of the case;

    (B) the commencement of a case under [title 11]; or

    (C) the appointment of or taking possession by a trustee in a case under [title 11] or a custodian before such commencement.

(2) Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if))

    (A)(i) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

    (ii) such party does not consent to such assumption or assignment ....

11 U.S.C. § 365(e).  HSP presents no authority or reasoning to support his implied assertion that the P&P partnership agreement remains an executory contract after the Final Judgment decreed that HSP breached the partnership agreement, awarded MJP damages, and ordered P&P dissolved, and after passage of the Final Judgment's 90-day prescription for winding up P&P.  Moreover, section 365(e)(1) by its terms only supersedes conflicting law if that law supports termination or modification of rights in an executory contract "solely because of a provision in such contract."  *Id.*  No one contends that a contract deprived HSP of authority to act on P&P's behalf after declaring personal

21

bankruptcy; MJP claims that Texas law has this effect.  *See* 2 COLLIER ON BANKRUPTCY § 365.06 at 365-48, -49 (reciting legislative history of section 365(e) indicating its function as an "express prohibition against the enforcement of bankruptcy termination clauses").  Thus, HSP may not employ section 365 to avoid section 35(3)(b).

Accordingly, we recognize no conflict between federal bankruptcy law and section 35(3)(b).

### III. CONCLUSION

Because HSP had no authority to institute Chapter 11 proceedings on P&P's behalf, we REVERSE the district court's order that affirms the bankruptcy court's confirmation of P&P's plan of reorganization.  Because HSP's plan of reorganization is wholly dependent on the existence of P&P's plan, we also REVERSE the district court's order affirming the bankruptcy court's confirmation of HSP's plan.  We REMAND this case for further proceedings consistent with this opinion.

REVERSED and REMANDED.